MARY L. GUDGEL, Appellant, v. MARY E. SOUTHERLAND, *et al.*

Lease by Life Tenant: DEATH DURING TERM: *Recovery of rent by executor.* Under Code, section 2988, providing that the executor of a tenant for life, who leases real estate so held, and dies on or before the day on which rent is payable may recover the proportion of rent which had accrued at the time of his death, where the tenant for life of a farm leased it for a year, and dies in less than four months and before any crops had been grown, his executor cannot recover any portion of the rent from the reversioner, without showing how the rent was to be paid, and what the *pro rata* share would be.

*Appeal from Dallas District Court.*—HON. J. D. GAMBLE,
Judge.

MONDAY, MAY 26, 1902.

~his case was tried to the court below on an agreed state-
ment of facts, which is substantially as follows: James H.
Gudgel was the owner of certain farm lands, which he deed-
ed to these defendants in severalty, with the following reser-
vations in the deeds: "I hereby expressly reserve the
possession, use, rents, and profits of said property during
my life time." In March, 1899, he leased the land to var-
ious parties for the term of one year, ending March 1, 1900.
He died June 15, 1899; and at that time no part of the
rent was due, nor had any of it been paid, and no crops had
then matured on the premises. This action is brought to
recover the rent accrued at the time of his death. There
was a trial to the court, and a judgment for the defendants.
The plaintiff appeals.—*Affirmed.*

*R. S. Barr* and *Edmund Nichols* for appellant.

*White & Clarke* for appellees.

SHERWIN, J.—Plaintiff concedes that, under the rule
of the common law, there could be no apportionment of
rent not due at the time of the death of the life tenant, but
contends that, under section 2988 of the Code she is en-
titled to a ratable rent for the time between March 1 and
June 15, 1899. This statute, and like statutes in other
states, were undoubtedly enacted following the principle
of the statute (11 Geo. II, chapter 19, section 15) and, by
considering the purpose of that statute, we may easily de-
termine the purpose of our own. Before the enactment of
the English statute there was no apportionment of rent in
respect to time, and, if the life tenant died an hour before
the rent reserved became due, it went to the reversioner;

but that statute provided that the executor of the deceased might collect a ratable rent for the time between the last payment and the death of the lessor. And this is the evident intent of our own statute, which is as follows: "The executor of a tenant for life who leases real estate so held, and dies on or before the day on which the rent is payable, * * * may recover the proportion of rent which had accrued at the time of his death." Rent would not be payable before it became due, and the word "accrued" must be construed to mean an apportionment of the rent between the executor and reversioner *pro rata* as to time, because, if "accrued" is held to mean "due," then the statute is deprived of all vitality. The trouble with the present case, however, is that there was nothing before the trial court from which he could determine what the *pro rata* rent would be. So far as the record before us discloses, there was nothing to show whether the rent was payable in cash, or in a share of the crops raised on the leased premises, or that any part of the premises was in crops at the time of the lessor's death. Instances may arise where the statute can be applied to the rental of farm lands, and it may also be extremely difficult in many cases to apply it to leases which provide for payment of rent in a share of the crops; but this question is not now before us, for the reason already stated. It is to be noticed, also, that there is no question here between the lessees of the life tenant and the reversioners. On the record before it, the trial court could not do otherwise than it did. —AFFIRMED.