J. J. SMYTH, Appellant, v. CATHARINE HALL and O. R. HALL.

**Fraudulent conveyances:** EXEMPTIONS: PROPERTY ACQUIRED WITH 1 PENSION MONEY. Land purchased with pension money is exempt from execution, although a portion of the price may have been paid from the proceeds of a sale of coal rights therein, as the

same constitute an interest in the land and are not the increase or produce derived from the land; and the property may be conveyed free from liability for grantor's debts.

**Fraud:** BURDEN OF PROOF. The burden of proving the intent of a son, in receiving a conveyance from his mother, to assist in defrauding her creditors, is on the creditors attacking the conveyance.

*Appeal from Lucas District Court.*— Hon. Robert Sloan, Judge.

Tuesday, February 14, 1905.

Action to set aside a conveyance of real property by defendant Catharine Hall to her codefendant, O. R. Hall, on the ground that it was made with intent to delay, hinder, and defraud creditors. There was a decree in favor of defendant O. R. Hall, and plaintiff appeals.— *Affirmed.*

*S. C. Hickman* and *J. A. Campbell,* for appellant.

*W. B. Barger, J. A. Penick* and *E. A. Anderson,* for appellees.

McClain, J.— The facts conceded by the appellant are that defendant Catharine Hall, who was drawing a pension from the federal government as a soldier's widow, in 1897 entered into a contract for the purchase of one hundred and sixty acres of land from one Brown for the agreed price of $2,400, and paid $216 of that amount out of her pension money. Afterwards she sold the coal rights under eighty acres of the land for cash, and used $1,050 of the proceeds in making a further payment, and then received a deed for the premises, subject to a purchase-money mortgage for $1,380. Of the one hundred and sixty-acre tract, forty acres became her homestead, on which she resided with her children; and in January, 1902, she conveyed the remaining one hundred and twenty acres to defendant O. R. Hall, one

of her sons, in consideration of the cancellation of her note to the son for $300, the payment of $720 in cash, and the assumption of the purchase-money mortgage on the entire tract. The contention of appellant is that this conveyance was in fraud of creditors, and he seeks to have it set aside, and the land subjected to the payment of judgments held by him against Catharine Hall. Counsel for appellant argue two grounds on which the decree of the lower court in favor of defendant O. R. Hall might have been predicated: First, that the land was exempt, as procured by pension money, under the provisions of Code, section 4009; second, that the evidence does not show that O. R. Hall accepted the conveyance to assist his mother in putting her property out of the reach of her creditors; and they question the correctness of the decree of the trial court, as predicated on either of these two grounds.

I. Prior to the enactment of chapter 23 of the acts of the Twentieth General Assembly, section 1 of which is subtantially embodied in section 4009 of the Code, it was held in 1. EXEMPTIONS: property acquired with pension money. this State by a divided court, and confessedly against the weight of authority in other States, that the exemption of pension money provided for in the federal statutes (Rev. St., section 4747 [U. S. Comp. St. p. 3279]) operated to exempt also property purchased with pension money. *Crow v. Brown,* 81 Iowa, 344; *Crow v. Brown,* 86 Iowa, 741. By the subsequent enactment of the provision above referred to, this rule is now statutory, and it has been held that it operates to exempt property for which that acquired by pension money is exchanged, no other funds being invested in the acquisition of the new property. *Smith v. Hill,* 83 Iowa, 684. But it does not operate to exempt the increase or produce derived from the property which is exempt as procured with pension money. *Diamond v. Palmer,* 79 Iowa, 578; *Haefer v. Mullison,* 90 Iowa, 372. And see *Marquardt v. Mason,* 87 Iowa, 136; *Cook v. Allee,* 119 Iowa, 226; *Manning v. Spry,*

121 Iowa, 191. In this case Catharine Hall's original interest in the land was acquired exclusively by the investment of pension money. The only subsequent payment made by her on the land was with proceeds of a sale of part thereof; that is, the right to take coal therefrom. This was an interest in the land, and not personal property resulting from the use of the land. We suppose it would not be questioned that if Catharine Hall had been able to sell a portion of the land at an increased price, and the proceeds had been sufficient to pay off the remainder of the purchase money, she would have held the remaining portion of the land exempt as acquired by pension money. And this case is analogous to that; the portion of the land sold being an interest therein consisting of coal rights, instead of a specified number of acres in fee. We reach the conclusion, therefore, on this branch of the case, that the entire interest which Catharine Hall had in the one hundred and sixty-acre tract purchased from Brown (that is, the entire ownership of the tract, subject to the purchase-money mortgage) was exempt, as acquired by pension money, and might be conveyed by her free from liability for her debts. *Marquardt v. Mason,* 87 Iowa, 136.

II. But a consideration of the evidence relied upon as tending to show fraud on the part of O. R. Hall in accepting a conveyance of the one hundred and twenty-acre tract from his mother leads to the same result. As already stated, it is established beyond reasonable controversy that O. R. Hall paid his mother $720 in cash, and surrendered a note which he held against her for $300, assuming the purchase-money mortgage. And it is equally well established that this was the reasonable value of the land at the time he purchased it. Counsel for appellant marshal the circumstances disclosed by the testimony of the witnesses, as tending to show that the cash payment was by money not actually belonging to O. R. Hall, but in reality the proceeds of property belonging to Catharine Hall and her other sons, who were indebted with

her to the plaintiff.   But we think that, the evidence pre-
ponderates in support of the contention for appellees that
this money belonged to O. R. Hall in his own right, as the
proceeds of live stock acquired by him with his own earn-
ings.   It will be impossible to set out the evidence relating to
the various transactions for the purpose of supporting this
conclusion, but it is reached after a careful examination of
the entire record.

The validity of the note for $300 which O. R. Hall
surrendered to his mother as a part of the consideration for
the purchase is also questioned; but we have no
2. FRAUD: bur-   difficulty in reaching the conclusion that this
   den of proof.
note was valid, representing an indebtedness for
services rendered in improving the farm while it belonged to
Catharine Hall.

The burden of proving a fraudulent purpose on the
part of O. R. Hall in accepting this conveyance, to assist
his mother in defrauding plaintiff and other creditors, was,
of course, on the plaintiff.   Counsel urge that the evidence,
taken together, shows a fraudulent scheme from the begin-
ning, by which the brothers of O. R. Hall induced their
mother to sign notes, which were negotiated for cash, and
the proceeds used in various ways until she became practically
bankrupt, with the purpose that this son, who did not be-
come liable for such indebtedness, should ultimately acquire
the property in his own name, and thus work a fraud upon
creditors.   But mere suspicion of fraud is not enough to re-
quire the setting aside of a conveyance made for an adequate
consideration, and the evidence on which plaintiff relies can
hardly be said to raise more than a mere suspicion.   The
transactions referred to by counsel are reasonably explained
by the testimony as consistent with the entire good faith of
O. R. Hall, and we reach the conclusion that no fraudulent
purpose on his part was established.

The decree of the lower court is therefore *affirmed*.