APPANOOSE COUNTY, Appellant, v. ALICE HENKE et al., Appellees.

MARCH 5, 1929.

*Purley Rinker,* for appellant.

*H. E. Valentine,* for appellees.

KINDIG, J.—Appanoose County, the plaintiff and appellant, on September 30, 1927, obtained judgment in the sum of $6,801.54 against Alice Henke, the defendant and appellee. She was a person of unsound mind, and the basis for the judgment was her care and support at the state hospital for the insane at Mt. Pleasant. It appears that the incompetent was committed to such institution in April, 1878, and has remained there ever since. Appellee R. B. Carson is now the guardian for the unfortunate woman. In October, 1927, appellant filed in the guardianship proceedings its application for an order commanding such trust officer to satisfy the judgment from the funds in his hands belonging to the ward. Resistance was made thereto by the appellee guardian on the ground that all the property in his possession belonging to the ward consisted of United States government pension money and interest which had accumulated thereon. No objection was made to the method used by appellant for obtaining the relief sought.

There arises but one question for determination, and that is whether or not the funds applied for are exempt from execution for the judgment debt. This problem presents two phases: one involves the principal of the exemption money, and the other the interest thereon.

I. Section 44 of Title 38 in the United States Code, Annotated, provides:

"No pension shall be paid to any person other than the pensioner entitled thereto, nor otherwise than according to the provisions of this title; and no warrant, power of attorney, or other paper executed or purporting to be executed by any pensioner to any attorney, claim agent, broker, or other person shall be recognized, nor shall any pension be paid thereon; but the payment to persons laboring under legal disabilities may be made to the guardians of such persons in the manner herein prescribed."

Following the foregoing is Section 54, under the same title, to this effect:

"No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

Also, Section 96 of the same title has some bearing upon the general subject. For authority on the broad proposition, see *United States v. Hall*, 98 U. S. 343; *Tama County v. Kepler*, 187 Iowa 34; *Manning v. Spry*, 121 Iowa 191. The *Tama County* case, supra, discussed the exemption· of pension funds in the hands of a guardian. Within that opinion is the following language:

"It is the settled law of the United States and of this state that the guardian in such case [while holding the funds of an insane ward] 'is nothing more than an agent for the government, and that pension money in his hands is still under its control and management.' * * * These authorities [*Manning v. Spry*, and *United States v. Hall*, supra] make it clear that this pension fund, which concededly had never reached the hands of the deceased, became no part of his estate, and his creditors have no standing in court to require its subjection to the payment of their claims."

By the above and foregoing Federal statutes and said decisions thereunder, appellee claims the judgment and decree of the district court is sustained, because, under that legislation and those determinations, the pension funds are exempt in the hands of an insane ward's guardian. If, however, that is not true, the appellee guardian urges that the property in his possession, nevertheless, must be exempt under Section 11761 of the Iowa 1927 Code, which reads:

"All money received by any person, a resident of the state, as a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned, or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not."

Appellant contends that neither the state nor the Federal

statutes afford appellees protection here. Such is so, he says, for the reason that the guardian is not, and cannot be, an agent of the Federal government in this case. Assuming, without deciding, that this is true, and presuming, without determining, that the Federal statutes have no application here, yet the principal pension fund, as distinguished from the interest and accumulations thereon, is exempt by virtue of the state statute above quoted. *Diamond v. Palmer*, 79 Iowa 578; *Haefer v. Mullison*, 90 Iowa 372; *Smyth v. Hall*, 126 Iowa 627; *State v. Cole*, 155 Iowa 654. See, also, *Andrew v. Colo Sav. Bank*, 205 Iowa 872.

II. Whatever the situation may be in reference to the application of the state or Federal statutes, appellant continues his argument by insisting that there is no exemption in the case at bar under either legislation, because the guardian commingled exempt with nonexempt funds. Each of those properties, otherwise distinguishable, he says, lost its identity through the mixing.

Obviously, under the record, appellant's position on that proposition cannot be successfully maintained. Throughout his administration, the guardian kept accounts. Nothing was received by this trust officer except pension money. Under order of court, this was invested and reinvested, so that, as a result, interest accumulated thereon. Principal and interest, it is true, were deposited together, but through the sufficiency and accuracy of the guardian's bookkeeping, it is easy to determine how much was principal and how much interest. That is enough to enable identification in the premises. *Hamm Brew. Co. v. Flagstad*, 182 Iowa 826. The problem there related to the loss of mortgaged cattle through intermingling. During the discussion, this court stated:

"There was an early day when the very coin of a trust fund was kept identifiable and separate from the coin of every other fund. In those days, to commingle the coin was to lose the identity of the fund; hence the old maxim, 'Money mixed is money lost.' * * * But such adage long ago lost its voice. Present-day methods of business have quite discarded the bag and the stocking. A large public interest requires that the circulating medium shall circulate. The separate identity of a fund can be maintained for every practical purpose by proper bookkeeping, accounting, computing, prorating, and applying legal presumption to that end."

Manifestly, the identity is not lost by placing the principal and interest together, as was done here by the appellee guardian, for his accounting is such that each item can be readily recognized.

III. Consequently, if the exemption is lost, it is because the pension money was deposited, invested, or loaned. Clearly, such property may be "deposited, loaned, or invested" without the sacrifice of the statutory protection. Forsooth, that is the very language of Iowa Code Section 11761, supra. So, by express legislation, the principal involved continued to be exempt, notwithstanding the guardian, by order of court, deposited, loaned, or invested it. *Diamond v. Palmer, Haefer v. Mullison,* and *Smyth v. Hall,* supra.

IV. Continuing his attack upon the judgment and decree of the district court, appellant suggests that claim of exemption can be made by the pensioner, but not by his guardian. Surely this cannot be true. Through Section 12613 of the 1927 Iowa Code, a guardian of an insane person has substantially the same powers, duties, and liabilities as does such trust officer for a minor. *Gates v. Carpenter,* 43 Iowa 152. Duties of guardians for minors are defined by Section 12581 of the Iowa 1927 Code. They are:

"Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

Hence, when appellant brought the present proceedings to appropriate the exempt property of Alice Henke, it was the duty of her guardian to defend for her. Furthermore, the very management of this property required the guardian to do this. Within the purview of those statutory duties, the guardian must act for his ward. He, to that extent, is the ward's *alter ego.* Resultantly, the guardian had the right, and in fact was bound, to demand the exemption.

V. Pursuing his objections to the judgment and decree of the trial court, appellant maintains that there was jurisdiction in the judicial tribunal to grant the redress. Undoubtedly the court has power to make proper allowances from the ward's property. However, it would have been error for the court be-

low to have denied the exemption, for appellant's judgment was beyond the legitimate uses to which the pension money could be devoted.

Judicial duty at that juncture was to protect, rather than consume, the pension fund. Application by appellant for a contrary holding could not change the law or the judicial duty involved.

VI: Even though he cannot obtain the principal, appellant asserts that he is entitled to the interest.

A distinction has steadfastly been made in the decisions of this court between pension principal and the interest accruing thereon and accumulations arising therefrom. While the former has always been allowed as exempt, yet such protection of the latter has been denied. *Haefer v. Mullison* and *Smyth v. Hall*, supra; *Bednar v. Carroll*, 138 Iowa 338. Apt statements in the *Bednar* case are:

"Under Section 4009 [now 11761], pensions received are exempt from execution, whether in the actual possession of the pensioner or deposited, loaned, or invested by him. * * * But in *Smyth v. Hall*, 126 Iowa 627, we said that the statutory provision embodying this rule did not operate to exempt the increase or proceeds derived from the property exempted to the debtor as procured with pension money. We find no authority for exempting to the pensioner the interest and interest upon interest derived from investments of pension money."

Apparently it was the purpose of the state and Federal governments to preserve the pension money, or its equivalent, for the use of the pensioner. On the other hand, such protection of the interest obviously has not to this date successfully appealed to either of those law-making bodies. In any event, neither has passed legislation in that regard. Thus this doctrine of non-exemption must be applied to the interest held by the appellee guardian. Allocation of the property in the guardian's possession can be made at once. The aggregate principal amounts to $3,654.70. Of this $300 was invested in Liberty bonds, under order of court. Nevertheless, under the rule previously announced, that remained part of the principal. All interest received by the guardian totaled $948.18. From this latter sum, certain expenditures were legally made. They in all amounted

to $261.12. Then, subtracting those payments from the interest received, there is a remainder of $687.06. Such is the amount liable to sequestration for application on appellant's judgment, and all the other property remaining in the guardian's possession is exempt.

VII. Denial is made by appellant that appellee has the right to deduct the expenditures aforesaid from the interest when figuring the nonexempt proceeds. No express evidence was produced by the guardian to show that the interest,  as distinguished from the principal, was thus used. It is true that the burden of proof is upon him who claims the statutory protection. Yet this obligation can be performed by the use of presumptions, under proper facts and circumstances. To put the thought in another way, appellee says it is to be inferred that he would preserve all the principal which was exempt, and would disburse or pay out only the nonexempt interest or accumulations. We are constrained to hold that is true. See *Leach v. Farmers Sav. Bank of Hamburg*, 205 Iowa 114; 10 Ruling Case Law 881, Section 28. Management of the ward's affairs would demand this much. Any other conduct on the part of the guardian would not be for the ward's best interests. Until the contrary appears, it must be assumed that the guardian did his duty. If this was done, he would make the financial outlay from the nonexempt moneys in his possession. Necessarily, then, it must be presumed that the interest, and not the principal, was utilized for making those payments.

Wherefore, the judgment and decree of the district court is modified to the extent that the net interest aforesaid remaining after deducting said expenditures is liable to appellant's claim; otherwise, the judgment and decree is affirmed.—*Modified and affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.