APPANOOSE COUNTY, Appellant, v. R. B. CARSON, Administrator, et al., Appellees.

No. 40114.

FEBRUARY 11, 1930.

REHEARING DENIED SEPTEMBER 22, 1930.

*Purley Rinker,* for appellant.

*H. E. Valentine,* for appellee.

FAVILLE, J.—It is conceded that appellant has a judgment against the decedent, and that the claim founded upon said judgment was duly filed in the estate. It is also conceded that appellee is administrator of the estate of said decedent, and that he has certain funds in his hands which were turned over to him by the guardian of said decedent, all of which are originally pension funds, and that whatever amount had accumulated thereon in excess of the original pension has been paid out by him. The appellee, who is now administrator of the estate of the decedent, was formerly guardian of said decedent. In a former action, appellant herein sought to establish its claim against certain of the funds which were in the hands of the guardian. On appeal, we held that the original pension fund in the hands of said guardian was exempt, but that the accumulations thereon were not exempt. *Appanoose County v. Henke,* 207 Iowa 835. The instant case involves solely the original pension funds, without accumulations, and said funds are now in the hands of the administrator of the estate of said decedent. The question is whether or not said funds are exempt, under either state or Federal statutes.

I. Section 11761, Code, 1927, is as follows:

"All money received by any person, a resident of the state, as a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or de-

posited, loaned, or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not.''

Under this section of the statute, pension money received by any person who is a resident of the state shall be exempt from execution against said pensioner. The statute, however, makes no provision that pension money in the hands of the pensioner at the time of the latter's death is exempt, in the hands of the administrator of his estate. The rule of homestead exemption, under Code Section 10153, has no application.

In the case of *Baugh v. Barrett*, 69 Iowa 495, we said, by way of dictum, that the statute which had been passed as Chapter 23 of the Acts of the Twentieth General Assembly was not applicable to the facts in said cause, and, regarding it, we said:

''It is apparent, however, that the act was intended solely for the advantage of the pensioner. It exempts the money or property from seizure for the satisfaction of his debts, and he is the person intended to be benefited by it.''

In *Perkins v. Hinckley*, 71 Iowa 499, we considered a case where the widow of a pensioner sought recovery of pension money in the hands of the administrator of her husband's estate. We held that the pension money was exempt to the pensioner under such statute, and not under the statute providing for exemption to the head of a family, and that, therefore, it was not personal property exempt to the widow of the pensioner, but passed to the administrator.

We find nothing in our statutes, nor in any of our previous decisions, to the effect that, under circumstances such as are disclosed in this case, pension funds in the hands of the administrator of the estate of a deceased pensioner who is not the head of a family are exempt to the heirs of said decedent. It therefore follows that, under the state statute, said funds in the hands of the administrator would be subject to the claims of creditors of the decedent.

II. The question then remains as to whether or not, under Federal statutes, the funds now in the hands of the administrator are exempt from the claims of the creditors of the decedent. Section 4747, Revised Statutes of the United States, is as follows:

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

The Supreme Court of the United States has construed this statute in *McIntosh v. Aubrey*, 185 U. S. 122 (46 L. Ed. 834), decided in 1902. The court said:

"The language of the section of itself seems to present no difficulty, and if doubt arises at all, it is only on account of the decisions of courts, whose opinions are always entitled to respect. *Crow v. Brown*, 81 Iowa 344; *Yates Co. National Bank v. Carpenter*, 119 N. Y. 550. But notwithstanding, we think the purpose of Congress is clearly expressed. It is not that pension money shall be exempt from attachment in all of its situations and transmutations. It is only to be exempt in one situation, to wit, when 'due or to become due.' From that situation the pension money of plaintiff in error had departed. The simplicity and directness of the statute are impaired by attempts to explain it by the use of other terms than its own. That money received is not money due, and that real estate is not money at all, would seem, if real distinctions be regarded, as obvious enough, without explanation. Nor are legal fictions applicable. Undoubtedly the law often regards money as land, and land as money, and, through all the forms in which property may be put, will, if possible, trace and establish the original ownership; but these are special instances, depending on special principles, and cannot be made a test of the purpose of Congress in enacting Section 4747."

The only question at this point is whether or not this statute is applicable under the facts of this case. Are the pension funds in the hands of the administrator of the estate of the pensioner within the terms of this statute? They were funds that had all "become due," and had in fact been paid by the government, and did not remain with the pension office. They were not with any officer or agent of the pension office. Even if, for some purposes, a guardian of a pensioner may be deemed an agent of the government (a question which we shall discuss later), it

does not follow that an administrator of a deceased pensioner is such officer or agent of the government. He takes the funds as the representative of the decedent, for the purpose of administering the estate, not as a guardian takes the funds, for the benefit of the pensioner personally. Nor do we think the fund can be said to be ''in the course of transmission to the pensioner entitled thereto.'' Under the facts of the instant case, the funds were not in the course of transmission to the pensioner. They had already been transmitted to the guardian of the pensioner during the lifetime of the pensioner. It would be doing violence to the obvious language and plain meaning of the statute to hold that, after the decease of the pensioner, and after the funds had been delivered to the administrator, they were *then* being held by the administrator ''in the course of transmission *to the pensioner.*''

. We therefore hold at this point that the funds in the hands of the administrator were not exempt under said Revised Statutes of the United States, Section 4747.

III. The question then remains as to whether or not there is any other provision of the Federal statutes under which said funds in the hands of the administrator are exempt from the claims of the creditors of said decedent. The Act of March 2, 1895 (28 Statutes at Large 964), is as follows:

''The accrued pension to the date of the death of any pensioner, or of any person entitled to a pension having an application therefor pending, and whether a certificate therefor shall issue prior or subsequent to the death of such person, shall, in the case of a person pensioned, or applying for pension, on account of his disabilities or service, be paid, first, to his widow; second, if there is no widow, to his child or children under the age of sixteen years at his death; third, in case of a widow, to her minor children under the age of sixteen years at her death. Such accrued pension shall not be considered a part of the assets of the estate of such deceased person, nor be liable for the payment of the debts of said estate in any case whatsoever, but shall inure to the sole and exclusive benefit of the widow or children. And if no widow or child survive such pensioner, and in the case of his last surviving child who was such minor at his death, and in case of a dependent mother, father, sister, or brother, no payment whatsoever of their accrued pension

shall be made or allowed except so much as may be necessary to reimburse the person who bore the expense of their last sickness and burial, if they did not leave sufficient assets to meet such expense.''

Under the facts of this case, are the funds in question an "accrued pension," within the meaning of said act?

The appellee relies upon *Tama County v. Kepler*, 187 Iowa 34. Said action was submitted upon an agreed statement of facts. It therein appeared that the pensioner, as in the case at bar, had been adjudged insane, and had been confined in a hospital, and that the plaintiff county had expended money for his care and support. The pensioner had died intestate, leaving no surviving spouse or direct heirs. As in the case at bar, the former guardian had been appointed administrator of the estate of said decedent, and had certain funds in his hands as administrator, and all of said funds had been received as pension money due to said decedent, and had accumulated in the hands of the guardian. We said:

''In this case it appears that the insane person was under guardianship, and that the moneys or funds which the plaintiff seeks to subject to the payment of its claim were never delivered to the pensioner, but were paid over to his guardian, and so far as appears, remained in his hands to the end of the pensioner's life. It is the settled law of the United States and of this state that the guardian in such case 'is nothing more than an agent for the government, and that pension money in his hands is still under its control and management.' *Manning v. Spry*, 121 Iowa 191, 198; *United States v. Hall*, 98 U. S. 343 (25 L. Ed. 180). In the *Spry* case, we recognized also the ruling of the pension department that 'pension funds in the hands of a guardian, which have not been paid to the pensioner or expended in his behalf * * * are in the nature of an accrued pension, and do not pass to his representatives upon his death.' See, also, United States Compiled Statutes of 1901, page 3257, where it is provided that accrued pensions 'shall not be considered part of the assets of the estate of such deceased person, nor be liable for the payment of the debts of said estate in any case whatsoever.' These authorities make it clear that this pension fund, which, concededly, had never reached the hands

of the deceased, became no part of his estate, and his creditors have no standing in court to require its subjection to the payment of their claims.''

It is apparent that the decision in the *Tama County* case was predicated somewhat upon our previous holding in *Manning v. Spry,* 121 Iowa 191. *Manning v. Spry,* however, did not involve funds in the hands of an administrator, but solely funds in the hands of a *guardian.* We held that the pension funds in the hands of a guardian of an insane pensioner were exempt from taxation, under the state statute. It may be conceded that much of the discussion in the opinion in that case is dictum, but the conclusion is correct, and is in harmony with our holding in *Appanoose County v. Henke,* supra. As said in the *Appanoose County* case, the guardian of an insane pensioner is, in certain respects, his ward's *alter ego.* The funds in the hands of the guardian are constructively in the possession of the pensioner-ward.

In *Fayette County v. Hancock,* 83 Iowa 694, we said:

''The money in question is in the possession of the guardian of the estate of the pensioner, and, therefore, is constructively in her possession, and not in the course of transmission to her.''

It may be true that, for purposes of criminal prosecution for embezzlement, the guardian may be regarded in the Federal courts as, in a sense, an agent of the government, and subject to prosecution in said courts for embezzlement of the pension funds of the ward in his possession. *United States v. Hall,* 98 U. S. 343 (25 L. Ed. 180). It could not well be questioned, however, that, if the insane ward were restored to normal mentality, the guardian might be discharged, and the funds turned over to the ward by the guardian. They would then be exempt to the pensioner, under the express terms of the state statute (11761). To the same extent, and for the same reason, they are exempt when ''constructively in the possession of the pensioner,'' by being in the hands of the pensioner's *guardian.* It is, therefore, obvious that the holdings in *Manning v. Spry,* supra, and *Appanoose County v. Henke,* supra, to the effect that pension funds in the hands of the *guardian* of the pensioner are exempt, are not determinative of the question as to whether

or not such funds are exempt in the hands of the *administrator* of the estate of the pensioner.

The *Tama County* case is also predicated upon the theory that the Act of March 2, 1895, with regard to *accrued pensions,* applies to pension funds that have accumulated in the hands of the guardian of an insane pensioner prior to the decease of the pensioner. Notwithstanding the pronouncement in the *Tama County* case, we are now of the opinion that the said statute has no application whatever to pension funds that have wholly accrued during the life of a pensioner, and have been in fact paid into the hands of the guardian of said pensioner during the pensioner's lifetime, and have been allowed to accumulate in his hands, and have subsequently been turned over to the administrator of the pensioner's estate. We think there is a clear distinction between "accrued pensions," under said Act of Congress, and accumulated or amassed pension funds which have been paid in full to the pensioner or his guardian, and have been allowed to accumulate, collect, or amass in his hands, and have been turned over to the administrator of the pensioner's estate. The word "accrued" is defined to mean "increased; augmented." Webster's International Dictionary.

In *Gudgel v. Southerland,* 117 Iowa 309, we considered the following statute:

"The executor of a tenant for life who leases real estate so held, and dies on or before the day on which the rent is payable, *. * * may recover the proportion of rent which had accrued at the time of his death."

We said:

"Rent would not be payable before it became due, and the word 'accrued' must be construed to mean an apportionment of the rent between the executor and reversioner *pro rata* as to time; because, if 'accrued' is held to mean 'due,' then the statute is deprived of all vitality."

See, also, *Weiser v. McDowell,* 93 Iowa 772; *Anderson v. Richards' Executors,* 99 Ky. 661 (37 S. W. 62) ; *Fay v. Holloran,* 35 Barb. (N. Y.) 295.

The statute in question doubtless has reference to pension funds that had accrued to the pensioner between the date of the

last payment to the pensioner and the time of the pensioner's death, or by special Act of Congress. For example, if a pensioner was paid to January 1st, and the next installment of pension was due April 1st, and the pensioner died March 1st, there would be an "accrued pension" for two months, which, under the statute, should not be considered a part of the assets of the estate of such deceased person, nor liable for the payment of his debt, but would inure to the sole benefit of the widow or children. This is exactly what the statute contemplates. It cannot be made applicable, it seems to us, to pension funds that had long since been due, and had been paid to the guardian of the pensioner, and turned over by him to the administrator of the pensioner's estate. Such funds are not "accrued pension," within the meaning of this statute. As we are advised, this holding is consistent with the rulings of the present commissioner of pensions. We have been cited to no authorities holding to the contrary, except our decision in the *Tama County* case.

There is no contention that any of the funds involved in this suit "accrued" between the date of the payment of the last installment of the pension and the death of the pensioner. They had all been paid before the pensioner's death, and are all in the hands of the administrator. Therefore, said statute respecting an "accrued pension" has no application to the instant case. We are constrained to hold that our conclusion in the *Tama County* case, applying the rule with respect to the funds of a pensioner in the hands of a guardian to the funds of a deceased pensioner in the hands of his administrator, was erroneous, and it must be, and is, overruled.

It follows that the judgment of the district court holding said funds in the hands of the administrator to be exempt from the debts of the decedent pensioner was erroneous, and it must be, and it is,—*Reversed.*

All the justices concur.