IN RE GUARDIANSHIP OF LETOURNEAU : STATE DEPARTMENT OF PUBLIC WELFARE, Appellant, vs. NATIONAL BANK OF COMMERCE, Guardian, Respondent.

*September 10—October 7, 1941.*

474

The cause was submitted for the appellant on the brief of *Blaine M. Linke,* collection and deportation counsel, and *Charles C. Lubcke,* law examiner, and for the respondent on that of *John J. Fisher* of Superior.

WICKHEM, J. Respondent's ward, Letourneau, a resident of the state of Minnesota, is a disabled war veteran who

in October, 1926, was adjudged insane by the Douglas county court and committed to Mendota hospital for the insane. He was cared for there and at Iowa county hospital until May, 1937, when he was transferred to a veterans' hospital and supported by the United States government without expense to the state of Wisconsin. Appellant's claim is for care and maintenance during the time the ward was a patient at the Mendota and Iowa county hospitals. The ward had no property at the time of his commitment, but from August, 1930, to July, 1937, the guardian received from the Veterans' Administration on behalf of the ward monthly payments totaling $1,672.50. Out of this sum the guardian purchased United States liberty bonds in the sum of $500. In 1934, these bonds were called for payment and were exchanged for United States treasury bonds in the same amount. In 1936, respondent purchased United States bonds in the sum of $600 and still holds these bonds. The investment of these bonds was wholly from funds derived from the monthly payments heretofore referred to. In addition to the bonds above noted the guardian holds adjusted-service bonds in the sum of $800 issued to the ward in payment of his adjusted-service certificate. Respondent's contention was to the effect that both the bonds which represented an investment of payments received from the Veterans' Administration and the adjusted-service bonds were exempt from the claims of creditors and particularly from appellant's claim.

There are three issues on this appeal. The first is whether the bonds purchased with funds paid to the guardian on behalf of the ward, and which constitute an investment of those funds, are exempt from the claims of creditors, and the second is whether the adjusted-service bonds which have not been changed in form and are in the guardian's hands just as received are subject to seizure under process, and, third, whether the claim of the state hospital is an ordinary debt of the ward

and covered by the statutory exemption. It will be convenient to deal with these questions separately.

1. *The United States treasury bonds which represent an investment of disability allowance received by the guardian.*

38 USCA, § 454, provides:

"The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable. . . ."

As pointed out in *Guardianship of Gardner,* 220 Wis. 493, 264 N. W. 643, the United States supreme court in *Trotter v. Tennessee,* 290 U. S. 354, 54 Sup. Ct. 138, 78 L. Ed. 358, held that moneys payable to a soldier under this section were undoubtedly exempt until they came into his hands or those of his guardian. The supreme court in the *Trotter Case* left open the question whether the exemption remained in force while they continued in these hands or on deposit in a bank. It held, however, that there was an end to the exemption when the money was invested. While the money in that case was invested in land there is nothing in the opinion in the *Trotter Case* to indicate that investment in personal property preserved the exemption. In *Guardianship of Gardner, supra,* p. 498, this court, speaking through Mr. Justice FOWLER, stated:

"We see no material difference as to exemption between land purchased with moneys received by the veteran from the government as compensation and moneys so received invested

in a mortgage, as $2,000 of it herein involved is invested, or invested in United States treasury bonds, as $1,003.42 of it is invested. If, under the statute relied on when the veteran invests his money in land or bonds, the investment is subject to taxation, as stated by Mr. Justice CARDOZO in the above quotation, so, under the same statute, is it subject to application to pay claims of his creditors."

See also in this connection *McIntosh v. Aubrey,* 185 U. S. 122, 124, 22 Sup. Ct. 561, 46 L. Ed. 834, construing sec. 54, which provides that—

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

In the *McIntosh Case* it was held that the exemption protects the funds only while in the course of transmission to the pensioner.

On August 12, 1935, sec. 454 was repealed and sec. 454a enacted. So far as material here sec. 454a reads as follows:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

It will be noticed that this section is more specific and outright than were the provisions of sec. 454 and expressly makes clear what was at least put in doubt by the *Trotter* and *McIntosh Cases,* namely, that after reaching the beneficiary and while on deposit the funds were not open to seizure under legal process. In *Estate of Bollow,* 223 Wis. 262, 269, 270 N. W. 82, it was said concerning this section:

"It seems likely that, aside from a purpose of clarifying the law, its principal purpose was to provide that payments made under the act, either to insured or designated beneficiary, are not subject to the claims of creditors either before or after receipt by either, and thus to set at rest doubts raised by prior judicial determinations. See *Trotter v. Tennessee,* 290 U. S. 354, 54 Sup. Ct. 138; *McIntosh v. Aubrey,* 185 U. S. 122, 22 Sup. Ct. 561."

It is claimed by respondent that, properly construed, sec. 454a extends the exemption to payments in whatever form they may exist in the hands of guardian or beneficiary. In other words, that the exemption applies even if the funds have been invested in land or securities, and that the purpose of the act was to repudiate the doctrine of the *Trotter Case.* As an original proposition, a reasonable argument might be made to this effect, but we are of the view that the argument is foreclosed by the decision in the case of *Carrier v. Bryant,* 306 U. S. 545, 59 Sup. Ct. 707, 83 L. Ed. 976. In that case the supreme court of North Carolina had ruled that negotiable notes and United States bonds purchased and held as investments for an incompetent World War veteran by his guardian out of benefit payments authorized under laws relating to such veterans were subject to execution against the incompetent. The judgment was affirmed and the *Trotter Case* followed. It was held that sec. 454a was intended to clarify sec. 454 rather than to change its import, and that the exemption should not apply to property purchased out of the moneys received from the government. In *Lawrence v. Shaw,* 300 U. S. 245, 57 Sup. Ct. 443, 81 L. Ed. 623, which followed the enactment of sec. 454a, it was held that bank credits not resulting from investments but from deposits of warrants and checks received from the government in payment of benefits are exempted from local taxation. It is there pointed out that the act of 1935, sec. 454a, was simply more specific than sec. 454. It is true that the *Lawrence Case* dealt

with taxation, and there was a provision in sec. 454a that its exemptions did not apply to taxation of property purchased in whole or part out of such payments. However, the argument that having expressly made the exemption of property purchased out of moneys received by the soldier inapplicable to claims of the United States and to taxes, congress must be supposed to have intended no further limitation upon it, is completely answered by the *Carrier Case*. It is our conclusion that the trial court was in error in holding that the exemption applied to the $500 United States treasury 2¾% bonds and the $600 United States treasury 2½% bonds.

2. *The adjusted-service bonds.*

With respect to the adjusted-service bonds the case is quite different. 38 U. S. Code, § 618, provides that—

". . . no adjusted-service certificate, and no proceeds of any loan made on such certificate, shall be subject to attachment, levy, or seizure under any legal or equitable process. . . ."

Sec. 686c provides as to adjusted-service bonds:

". . . such bonds . . . shall not be . . . subject to attachment, levy, or seizure under any legal or equitable process and shall be payable only to the veteran or, in case of death or incompetence of the veteran, to the representative of his estate."

These sections wholly govern the exemption or nonexemption of these bonds. It has been held that even where a veteran surrendered his adjusted-service certificate, received adjusted-service bonds from the government, cashed a portion of these, and held the currency received from them, that the cash so received was exempt from seizure under these sections. *Mahar v. McIntyre* (D. C.), 16 Fed. Supp. 961; *Culp v. Webster*, 25 Cal. App. (2d) (Supp.) 759, 70 Pac. (2d) 273. See also *In re Houchins* (D. C.), 17 Fed. Supp. 556. *In re Murray's Estate* (1936), 159 Misc.

865, 289 N. Y. Supp. 81. We deem it unnecessary to labor the point. The statute is clear and unambiguous and the adjusted-service bonds held by respondent are clearly and unambiguously within the exemption.

3. *Appellant's status as a creditor.*

Appellant's final contention is that the exemption of secs. 454, 454a, 618, and 686c does not extend to a claim for care and maintenance furnished an inmate of a state institution, and that therefore, however construed in connection with the issues just discussed, none of these sections apply to make the securities exempt. Reliance is had upon the case of *Yerger's Estate,* 32 Pa. Co. Ct. 237, which does give some color to this contention, but we are satisfied that it has no merit as applied to the federal statutes here under consideration. Plaintiff claims that it is not a creditor or at least not such a creditor as is covered by the exemption. However, secs. 618 and 686c make no mention of the word "creditor." They are cast in the terms of procedure and provide that no adjusted-service certificate or bond shall be subject to attachment, levy, or seizure under any legal or equitable process, and in the case of the bond shall be payable only to the veteran. While sec. 454a makes the funds exempt from the claims of creditors, it adds substantially the same clause with reference to freedom from legal or equitable process. The terms of these sections are too broad and inclusive to give any color to appellant's argument. The evident legislative intent was to exclude such an inquiry as is proposed by plaintiff's contention.

*By the Court.*—Judgment modified as indicated in the opinion and as so modified is affirmed. No costs to be taxed upon this appeal.