IN RE ESTATE OF LUCY A. TODD; CORA WRIGHT, administratrix.

No. 48078.

(Reported in 54 N.W.2d 521)

JULY 28, 1952.

Clyde E. Herring, County Attorney, and John E. Sarbaugh, Assistant County Attorney, for appellant.

Henry T. McKnight, of Des Moines, for appellee.

MANTZ, J.—Lucy A. Todd, of Des Moines, Iowa, died at Clarinda, Iowa, May 27, 1950. She was the widow of a Spanish-American War Veteran and as such drew a pension following his death. The pension was paid regularly thereafter. Some years before her death she became insane and was placed under guardianship and was taken to the state hospital at Clarinda. Thereafter the expense of her care and keep were paid by Polk County, Iowa. After her death her estate was opened in Polk County and an administratrix appointed. At the time of the death of Mrs. Todd the guardian had on hand the sum of $1376.11, all proceeds of her pension. The guardianship was closed and this sum was turned over to the administratrix. Polk County made a claim against her estate for expenses paid for such care and keep. The administratrix resisted such claim on the ground that such sum having been received from her pension was exempt from the

claims of creditors. She filed a final report showing payment of all claims except that of Polk County for the expense of decedent at said hospital. Polk County objected to said final report and asked that its claim be allowed. The trial court sustained such resistance holding the funds not liable for such claim. Polk County has appealed.

According to the records, Lucy A. Todd, after being adjudicated an insane person, was taken to the Clarinda State Hospital on March 28, 1947, and remained there until her death on May 27, 1950. During the period of her guardianship Polk County paid her expenses while so confined and on December 29, 1949 filed a claim in the guardianship for expenses already paid by said county and also for current future expenses. This claim was resisted by the Veterans' Administration on the grounds that the guardianship funds were exempt from creditors' claims on account of being derived from a United States pension.

After hearing upon said claim the court ordered the guardian to pay to Polk County the current needs of the ward while in Clarinda, starting July 1, 1949, and thereafter whenever demand was made therefor by Polk County.

On June 21, 1951, the administratrix filed a final report in the estate which showed that all of the heirs of Lucy A. Todd were collateral. Said report failed to show that she had anyone dependent upon her. It further showed that there had been received from said guardian from the Veterans'. Administration a sum total of $1376.11; that there had been paid out by the administratrix as estate expenses $505.08, leaving a balance on hand of $871.03. She asked that certain sums be allowed for attorney fees and costs of administration and that any balance remaining be distributed to the heirs-at-law of Lucy A. Todd, and that thereafter the administratrix be discharged and the estate closed. Polk County objected to the final report and again asked for allowance of its claim. Its denial is the basis of this appeal.

I. The question here involved is whether or not, under the Federal Statutes, the funds in the hands of the administratrix are exempt from the claims of the creditors of Lucy A. Todd, and particularly of Polk County, the claimant herein.

Both parties in brief and argument state that the only issue

in the case is: "Did Congress in enacting Section 454a, Chapter 10, Title 38, U. S. C. A., exempt the proceeds from a Federal Government pension paid to a widow of a Spanish-American War Veteran from the claims of her creditors after her death while the proceeds are in her estate?"

The applicable parts of 38 U. S. C. A., section 454a, are as follows:

"Assignability and exempt status of payments of benefits. Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments."

Prior to the enactment of section 454a there was in the statutes of the United States what was designated "World War Veterans' Act, 1924" (section 454), the applicable part being as follows:

"Assignability and exempt status of compensation, insurance, and maintenance and support allowances. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance or maintenance is payable.

"The provisions of this section shall not be construed to prohibit the assignment by any person to whom converted insurance shall be payable under Part III of this chapter of his interest in such insurance to any other member of the permitted class of beneficiaries."

934

In providing for pensions for veterans of the Spanish-American War, Congress enacted 38 U. S. Code, section 364a 11, to persons in order of precedence "to the unremarried widow, and in some cases to the minor and disabled children, and to dependent parents of a deceased veteran regardless of the cause of the death of the veteran, *but to no other persons.*" (Italics supplied.)

When section 454a above set forth was enacted there was in the Revised Statutes of the United States section 4747, which is as follows: "No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension Office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

In the case of Appanoose County v. Carson, 210 Iowa 801, 229 N.W. 152, the court had before it the question of the exemption from seizure of the proceeds of pension money. After quoting the above statute (section 4747, Revised Statutes of the United States) the Iowa court in support of its holding that the pension was for the benefit of the veteran quoted from the case of McIntosh v. Aubrey, 185 U. S. 122, 22 S. Ct. 561, 46 L. Ed. 834, wherein the United States Court, speaking of such section, held that pension funds in the hands of an administrator of the estate of such pensioner within the terms of the statute were not funds to "become due" nor were they "in the course of transmission"; that they were in the hands of the representative in the estate and were the proceeds of sums paid for the personal benefit of the pensioner. The Iowa opinion then said at page 805 of 210 Iowa: "It would be doing violence to the obvious language and plain meaning of the statute to hold that, after the decease of the pensioner, and after the funds had been delivered to the administrator, they were then being held by the administrator 'in the course of transmission' to the pensioner."

The opinion in Appanoose County v. Carson, supra, proceeded to consider the Act of March 2, 1895 (28 Stat. at L. 964) dealing with pensions accrued at the death of the pensioner holding such funds to be exempt from claims of creditors etc., and should not be considered a part of the estate nor be liable for his

debts, but should inure for the benefit of the widow or children.

In the case of Tama County v. Kepler, 187 Iowa 34, 173 N.W. 912, said section was considered. It appeared that the pensioner had been adjudged insane, had been confined to a hospital, and the county had expended money for his care and support. The pensioner died intestate leaving no spouse or direct heirs. There had been a guardian and at the death of the pensioner the guardian was appointed administrator. This court held that the funds on hand being in the hands of the guardian were not part of the pensioner's estate.

In Appanoose County v. Carson, supra, the court re-examined the holding in Tama County v. Kepler, supra, and held that "accrued funds" as the term was used in the statute meant funds in the hands of the guardian were not a part of the pensioner's estate and were not liable to creditors. In so doing the opinion in Appanoose County v. Carson stated at page 808 of 210 Iowa:

"Notwithstanding the pronouncement in the Tama County case, we are now of the opinion that the said statute has no application whatever to pension funds that have wholly accrued during the life of a pensioner, and have been in fact paid into the hands of the guardian of said pensioner during the pensioner's lifetime, and have been allowed to accumulate in his hands, and have subsequently been turned over to the administrator of the pensioner's estate. We think there is a clear distinction between 'accrued pensions,' under said Act of Congress, and accumulated or amassed pension funds which have been paid in full to the pensioner or his guardian, and have been allowed to accumulate, collect, or amass in his hands, and have been turned over to the administrator of the pensioner's estate."

Further (page 809) the court said: "We are constrained to hold that our conclusion in the Tama County case, applying the rule with respect to the funds of a pensioner in the hands of a guardian to the funds of a deceased pensioner in the hands of his administrator, was erroneous, and it must be, and is, overruled."

The administratrix relies upon the provisions of section 454a, already set forth, as supporting her claim that the funds in her hands arising out of the pension of Lucy A. Todd are

exempt from claims of creditors. We have held that exemption of property from the payment of debts is purely statutory and courts may not enlarge the exemptions. Exemptions are statutory and while it is true that such grants are to be liberally construed, yet the grant must appear in the statute or no exemption can exist. It is not for the court to say that the legislation intended a larger grant of exemptions than is given in the plain wording of the statute. Voris v. West, 180 Iowa 138, 162 N.W. 836; Morgan & Hunter v. Rountree, 88 Iowa 249, 55 N.W. 65, 45 Am. St. Rep. 234; Dunbar v. Spratt-Snyder Co., 208 Iowa 490, 226 N.W. 22, 63 A. L. R. 1016.

In the case of Carrier v. Bryant, 1939, 306 U. S. 545, 59 S. Ct. 707, 83 L. Ed. 976, the issue before the court was whether U. S. bonds purchased out of a veteran's benefits and held as investments were subject to execution by a creditor of the veteran. In construing section 454a, 38 U. S. C. A., the court refused to infer an exemption of such bonds from the claims of creditors.

In the case of McIntosh v. Aubrey, supra, there was an ejectment action by Aubrey who was a grantee in a sheriff's deed of the McIntosh land sold in 1897 on a creditor's judgment against Mrs. McIntosh. She had acquired the land with pension money as a widow of a Civil War Veteran and she contended that the land was exempt from execution under Revised Statutes, section 4747. The Pennsylvania Common Pleas Court held against her. Aubrey v. McIntosh, 10 Pa. Super. 275. The U. S. Supreme Court affirmed and in so doing held that when the pension money had been paid to him it inured wholly to his benefit and was liable to seizure as opportunity presented itself. See also Wissner v. Wissner, 338 U. S. 655, 70 S. Ct. 398, 94 L. Ed. 424.

This same matter was discussed at length in In re Guardianship of Bagnall, 238 Iowa 905, 29 N.W.2d 597. Therein Justice Bliss discussed the rules and cases at length with reference to exemptions under U. S. Statutes, section 454 of chapter 10, Title 38 U. S. Code.

As heretofore stated section 454 was repealed and section 454a enacted in its stead. It would seem that the latter was enacted to clarify and make more definite the matters dealt with

in the two sections. In the case of Lawrence v. Shaw, 300 U. S. 245, 249, 57 S. Ct. 443, 445, 81 L. Ed. 623, the court had before it the question of whether compensation and insurance benefits should be exempt from all taxation. In discussing the matter the court said: "This more detailed provision was substituted for that of the earlier Act and was expressly made applicable to payments theretofore made. We think it clear that the provision of the later Act was intended to clarify the former rather than to change its import and it was with that purpose that it was made retroactive."

Consequently the question presents itself: Were the funds in the estate exempt under the provisions of the Federal law, 38 U. S. Code (section 454a)? This statute has been hereinbefore set forth.

It is the claim of appellant that when Congress enacted laws relating to veterans' compensation, pensions, bonuses and relief were intended to benefit the veteran and his immediate family and to benefit no other persons.

The record and the final report of the administratrix showed that Lucy A. Todd died intestate and at her death was a patient at the Clarinda State Hospital and that her expenses there had been paid by Polk County; that the only money on hand came from her pension as the widow of a Spanish-American War Veteran; that she left surviving two sisters and a brother, all adults. No claim has been made by the administratrix of anyone dependent upon the deceased. The resistance to the claim of Polk County, Iowa, is that the fund on hand is not liable to the claims of creditors.

However, the record shows that before the death of Lucy A. Todd, and while she was an inmate of said Clarinda State Hospital and under guardianship, Polk County filed a claim against said guardianship for its reimbursement for sums paid for her support in said institution and for current future support. The Veterans' Administration resisted such claim on the ground that such pension fund was exempt from such claim. After hearing the court ordered future current expense to be paid therefrom and to start July 1, 1949, and to continue in the future. No appeal was taken from said order. Lucy A. Todd remained in said hospital until her death May 27, 1950. It will

be noted that the administratrix in the present proceedings set up the same defense against the claim of Polk County as was urged by the Veterans' Administration in the guardianship proceeding, the only difference being that on July 29, 1949, Lucy A. Todd was living.

In the instant case the court held the immunity granted by the U. S. Statute, section 454a, above-quoted, and construed such exemption of the Spanish War pension not only to the pensioner and her guardian but after her decease to collateral heirs, to wit, sisters and a brother, and denied the claim of Polk County for its expenditure for the benefit of the pensioner. This holding grants immunity of said pension in the hands of the administratrix and in favor of those not mentioned in the exemption statute 454a, and the statute it succeeded (section 454). We hold that such holding is directly contrary to that of Appanoose County v. Carson, supra; In re Guardianship of Bagnall, supra; Walker v. Queener, 174 Tenn. 129, 124 S.W.2d 236; Auditor General v. Olezniczak, 302 Mich. 336, 4 N.W.2d 679; Estate of Buxton, 246 Wis. 97, 16 N.W.2d 399; In re Guardianship of Letourneau, 238 Wis. 473, 300 N.W. 248; Carrier v. Bryant, supra; Iowa Methodist Hospital v. Long, 234 Iowa 843, 12 N.W.2d 171, 150 A. L. R. 440; Howard v. Davis, 192 Ga. 505, 15 S.E.2d 865.

In In re Guardianship of Bagnall, supra, Justice Bliss made a full and complete analysis of various U. S. Statutes dealing with pensions, compensation and benefits of veterans—statutes dealing with exemption from taxation or seizure by creditors. In that case the divorced wife of a veteran sought to reach pension funds to pay alimony awarded her in the divorce decree. The court held that investments from pensions were not exempt from seizure for such alimony. Many cases were cited and discussed. It was there stated that section 454a was simply to make certain and definite section 454.

Most of the holdings of the various courts are to the effect that the legislation as to pensions, compensation and the like is to afford economic security for servicemen and their dependents. We hold that while the exemption statutes are to be liberally construed and in keeping with the purpose of the legislative enactment they are not to be enlarged. Morgan & Hunter

v. Rountree, supra; McIntosh v. Aubrey, supra; Tompkins v. Tompkins, 132 N. J. L. 217, 38 A.2d 890. The holding in the Bagnall case referred to the prior holding in the case of Appanoose County v. Carson, supra, to the effect that under both State and Federal statutes pension funds paid by a guardian to an administrator are not exempt from the debts of deceased pensioner when in the hands of such administrator.

We have examined the cases which the trial court cited in behalf of its ruling; also various ones cited by the administratrix in her briefs. We recognize that there are various holdings which seem to uphold the contention of the administratrix. Said administratrix places emphasis upon In re Estate of McCormick, Surrogate's Court, 169 Misc. 672, 8 N. Y. S.2d 179. This involved a United States policy of War Risk Insurance. The assured made the policy to his father. At the death of assured payments were made to his father. The father died and it was sought by a creditor to reach the unpaid part for payment of expenses incurred in taking care of the deceased veteran. The court refused to allow the claim. The court and the administratrix both cite Pagel v. Pagel, 291 U. S. 473, 54 S. Ct. 497, 78 L. Ed. 921. This case likewise involved insurance and in its opinion the United States Court ruled that under section 454 the exemption did not extend beyond the insured and the beneficiary. In the instant case the administratrix argues that as Congress later enacted section 454a the above ruling did not apply to the instant case. The basic argument of the administratrix is that section 454a repealed section 454 and enlarged the operation as to United States pensions, compensation and benefits.

We are satisfied that the purpose behind the granting of pensions and other benefits was the welfare of the veteran and others designated by statute. In many of the cases coming before the courts it has been said that the primary purpose was to protect the pensioner and others designated by statute. Pensions are granted to provide for the care and support of such pensioners in order to prevent them from becoming public charges. They are purely statutory. In short, the pension granted is for pensioner and his dependents. When such need ends the necessity ends and the unexpended accumulations properly become a part of the pensioner's estate and are to be disposed

of according to law. Appanoose County v. Carson, supra. It seems to us that to allow remote and collateral heirs to become recipients of the pension bounty would be contrary to the spirit and purpose of pension enactments.

In re Estate of McCormick, supra, relied, upon by the administratrix, a surrogate court of Kings County, New York dealt with an exemption of insurance benefits and therein construed U. S. Code section 454a. It was the claim there that such section broadened the exemption of section 454 to cover funds after the death of the beneficiary. This decision was not passed upon by the appellate court of New York. We think that it was contrary to the opinion of the United States Supreme Court in Lawrence v. Shaw, supra, wherein that court said that section 454a "was intended to clarify the former [provision] rather than to change its import." Also, the surrogate court did not have the benefit of a later decision of the United States Supreme Court, Carrier v. Bryant, supra.

Attention is further .called to a holding of the New York court following the McCormick case in In re Estate of Stevens, 1941, 261 App. Div.. 48, 24 N. Y. S.2d 786. The McCormick case was decided in 1938. In the Stevens estate case the appellate court, in reversing a holding of the surrogate court, held that creditors of a deceased widow of a veteran of the Civil War can reach assets of the deceased widow, which assets were proceeds of the widow's pension. This was a fact situation almost identical with the instant case.

We hold that neither statute 454 nor 454a was intended to extend the exemption to Lucy A. Todd beyond her death. We hold that such construction is just, fair and reasonable, and in keeping with the spirit of pension legislation as construed by the Supreme Court of Iowa and by the United States Supreme Court.

Attention is called to the hearings in Congress at the time of the enactment of 38 U. S. C., section 454a. Some of these are shown by footnotes appended to the legislative enactment to set out the purpose of such enactment. Footnote No. 11 deals with pensions to Widows and Children after May 1, 1926, and, in substance, states that the unremarried widow of a veteran of the Spanish-American War shall be placed upon the pension roll and that ·each child until it reaches the age of sixteen shall be

eligible to such pension. Such footnote is appended as explanatory to the enactment. Obviously it was the purpose of Congress to benefit the widow and children under sixteen years of a deceased Spanish-American War Veteran. There is no mention therein of benefits extending to collateral heirs such as those of Lucy A. Todd.

We do not think it necessary to elaborate further or review cited cases. We hold that the trial court erred in not sustaining the objections made by Polk County to the final report of the administratrix. The pension received by Lucy A. Todd was for her support as a widow of a veteran of the Spanish-American War. This was paid only in part by her guardian and not at all by the administratrix of her estate. We hold that Polk County should be repaid so far as the funds in the hands of the administratrix will go.—Reversed and remanded.

MULRONEY, C. J., and BLISS, OLIVER, WENNERSTRUM, SMITH, and HAYS, JJ., concur.