In re Guardianship of Daniel L. Bagnall, Incompetent.

Effie G. Bagnall, Appellant, v. Iowa-Des Moines National Bank & Trust Company, Guardian, Appellee.

No. 47055.

OCTOBER 14, 1947.

E. W. McManus, of Keokuk, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellee.

BLISS, J.—The primary question for determination on this appeal is whether the property of the mentally incompetent divorced husband, in the possession of his guardian, which has been acquired with benefit payments of the kind noted above, is exempt, under either the statutes of the United States or the statutes of Iowa, from the enforced payment of the judgment of the plaintiff wife for alimony.

This question has never before been presented to this court.

The facts are not in dispute. Daniel L. Bagnall served in the armed forces of the United States in 1918 and 1919. The plaintiff and he were married on December 28, 1921, and they lived together as wife and husband for five or six years. He did not provide for her and because thereof they lived with her parents. He abused her by physical violence and mistreatment, by cursing and improper language, by neglect and absence, and by addiction, acquired subsequent to the marriage, to the use of intoxicating liquor and drugs. .

He was adjudged insane in 1928, and since September of that year has been continuously a patient in the Veterans' Hospital at Knoxville, Iowa. The defendant was appointed guardian of his property by the district court of Polk County, Iowa, on June 3, 1929. Through the Veterans' Administration there had been paid to the defendant and its predecessor guardian, to June 12, 1946, disability compensation or pension in the sum of $17,574.06, war risk insurance in the sum of $6,552.35, and adjusted service compensation or bonus in the sum of $603, or a total of $24,729.41. The only property in the hands of the guardian was acquired with these payments. At the time of the trial it had in its possession, as the property of its ward, two and one-half per cent Treasury Bonds of the United States of the par value of $2,250, carried at $2,255, due September 15, 1932, optional September 15, 1950; United States Savings Bonds, Series D, due December 1, 1949, of $400 maturity value, carried at $336; United States War Savings Bonds, Series G, of $16,300 par value, of various denominations, maturities, and numbers; a United States Government insurance policy for $5,000 in the name of Daniel L. Bagnall, carried at $1. These securities totaled $18,892. Each and all of them represent investments made by the guardian or its predecessor from the proceeds of disability compensation, pension money, war risk insurance, and adjusted service compensation or bonus.

On August 30, 1946, plaintiff obtained a decree of divorce from Bagnall in the district court of Lee County, Iowa. An authenticated copy of the decree was received in evidence, without objection. It appears therefrom the court found that the husband, after the marriage, had become addicted to habitual

drunkenness in the use of intoxicating liquors and drugs, and had been guilty of such cruel and inhuman treatment as to endanger plaintiff's life and health; that plaintiff was forty-six years old and defendant was about fifty years of age; that plaintiff lived with her parents and had no earning capacity and no property of any kind and was entitled to permanent alimony; and that the husband was the owner of cash and securities amounting to $19,160.11. Plaintiff was granted a decree of absolute divorce and a judgment against her husband defendant in the sum of $9,580 as permanent alimony.

On November 1, 1946, plaintiff filed the application herein, alleging in substance the facts above set out, praying for a hearing, and an order requiring the defendant to pay plaintiff out of its said guardianship funds the sum of $9,577.50, with interest.

On November 9, 1946, defendant filed resistance to the application, alleging the army service of its ward, his honorable discharge, his disability in the service, his mental incompetency and guardianship, and the award to him of disability compensation or pension and monthly payments of war risk insurance as provided in the World War Veterans' Relief, Title 38 U. S. C., chapter 10, section 421 et seq. The resistance admitted the government payments as alleged in the application, and cash or property in which the payments had been invested of the value of $19,160.11, as shown by its last report of June 12, 1946; it alleged that all nonexempt funds, and earnings on exempt funds as invested, had been disbursed by the guardian by order of court, and that all the funds and property now in the hands of the guardian were exempt with respect to the judgment for alimony, by reason of section 454a, 38 U. S. C., chapter 10, which applies to the disability compensation or pension and to the war risk insurance payments, and by reason of section 618, 38 U. S. C., chapter 11, which applies to adjusted service compensation or bonus, and by reason of section 627.8, Code of Iowa, 1946, which exempts pension money from execution, and section 511.37, Code of Iowa, 1946, which exempts a benefit or indemnity paid under an accident, health, or disability policy to the assured.

For reply to the resistance plaintiff admitted all allegations therein set forth above but denied the exemption of the property as against the judgment for alimony.

In its judgment of December 12, 1946, denying the application, the court held:

"Without setting forth the exemption statutes cited in [the] guardian's resistance, it is manifest that, construing the Federal and State statutes together, pension money, in the form of money or investments, is exempt from execution in Iowa. There can be no doubt that under the applicable Federal statutes, the moneys paid to the veteran are exempt. Under the Federal statute and the constructions of our Supreme Court, a guardian while holding the funds of an incompetent veteran is nothing more than an agent for the Government and such funds have therefore not reached the hands of the veteran. In addition to the interpretation of the Federal statute by our State court, the pension fund is exempt by virtue of the State statute, which provides: [quoting section 627.8, Code, 1946]. The pension money received by the veteran or his guardian, whether 'deposited, loaned or invested by him,' is exempt from execution. The application to subject the funds and property in the hands of the guardian to applicant's judgment is an aid to and amounts to an execution and is contrary to the exemption statute."

Omitting preliminary matters, the above-noted quotation is the judgment in full.. Plaintiff's motion to set aside the judgment and for new trial, based upon various grounds alleging error in holding the property to be exempt, was denied.

Plaintiff assigns four errors upon which she relies for reversal: 1. Error in holding the investments exempt under federal statutes. 2. Error in holding the guardian was an agent of the Federal Government and that the guardianship funds are exempt because they have not reached the hands of the veteran. 3. Error in holding the investments exempt under the Iowa statutes. 4. Error in holding that investments derived from pension funds can under no circumstances be subject to execution in Iowa.

No question is presented in reference to the validity or the invalidity of the decree of divorce or the judgment for alimony.

The defendant bases its resistance to plaintiff's application, and the trial court based its decision, upon both Congressional Acts and the statutes of Iowa, noted in the resistance filed by defendant. We set out below the pertinent parts of the acts. The federal acts, now in force, may be found in Title 38 U. S. C., Pensions, Bonuses, and Veterans' Relief. Chapter 10 thereof—World War Veterans' Relief—is commonly cited as the "World War Veterans' Act, 1924. (June 7, 1924, ch. 320,§1, 43 Stat. 607.)"

The payments of disability compensation ($17,574.06) and war risk insurance ($6,552.35) were received by Bagnall's guardian under section 454 of chapter 10, 38 U. S. C. This section provided:

"The compensation, insurance, and maintenance and support allowance payable under Parts [Titles] II [Disability Pensions], III [Insurance], and IV [Vocational Rehabilitation], respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts [Titles] II, III, or IV; and shall be exempt from all taxation.* * *(June 7, 1924, c.320,§22, 43 Stat. 613.)"

An earlier Act of Congress relating to pensions to Civil War veterans, was section 4747, Revised Statutes of the United States, passed March 3, 1873 (38 U. S. C., chapter 2, section 54). This section provided that:

"No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension Office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto; but shall inure wholly to the benefit of such pensioner."

Both section 4747 of the Revised Statutes, supra (38 U. S. C., chapter 2, section 54), and section 454, supra, of 38 U. S. C., chapter 10, "World War Veterans' Act, 1924" were repealed by Act of August 12, 1935, chapter 510, section 3, 49 Stat. 609, and section 454a of chapter 10, 38 U. S. C., was enacted, as follows:

"§454a. Assignability and exempt status of payments of benefits. Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. * * * (Aug. 12, 1935, ch. 510,§3, 49 Stat. 609; Oct. 17, 1940, ch. 893,§5, 54 Stat. 1195.)"

By its terms the act was made applicable to such benefit payments as had been theretofore made.

With respect to payments made to the guardian for adjusted service compensation or so-called bonus ($603) the defendant also relies upon section 618 of chapter 11, 38 U. S. C., which is:

"§618. Benefits exempt from seizure under process and taxation * * * No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named under Subchapter V of this chapter, no adjusted-service certificate, and no proceeds of any loan made on such certificate shall be subject to attachment, levy, or seizure under any legal or equitable process, or to national or State taxation, and no deductions on account of any indebtedness of the veteran to the United States shall be made from the adjusted-service credit or from any amounts due under this chapter. (May 19, 1924, ch. 157,§308, 43 Stat. 125; July 3, 1926, ch. 751,§3(a), 44 Stat. 827.)"

One of the statutes of Iowa relied upon by defendant is section 627.8, Code, 1946, which is:

"Pension money. All money received by any person, a resident of the state, as a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned, or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not. [C97,§4009; C24, 27, 31, 35, 39,§11761]"

This section, in identical language, was enacted by the Twentieth General Assembly, chapter 23 of its Acts, section 1. It became effective in March 1884.

Section 511.37, Code, 1946, also relied upon, provides:

"Policy exempt from execution. * * * Any benefit or indemnity paid under an accident, health or disability policy shall be exempt to the assured, or in case of his death to the husband or wife and children of the assured, from his debts."

Other sections in Title 38 U. S. C. having a bearing upon the intention and purpose of congress in the adoption of the federal sections quoted above are here noted.

Section 45 of chapter 2 of said Title, provides:

"In case a resident pensioner of the United States shall for a period of over six months desert his lawful wife, she being a woman of good moral character and in necessitous circumstances, or, if he have no lawful wife, shall desert his legitimate minor child or children under sixteen years of age, or his permanently helpless and dependent child, the Administrator of Veterans' Affairs, upon being satisfied by competent evidence of such desertion, shall cause one-half of the pension due or to become due said pensioner during the continuance of such desertion to be paid to the wife, or in case there is no wife, to the legal guardian of the child or children. (R. S.,§4766 * * * July 3, 1930, ch. 863,§2, 46 Stat. 1016.)" Derivation, Act July 8, 1870.

"§49a. Apportionment of payments where family not living together. Where a disabled person, entitled to pension, compensation * * * and his wife are not living together, or where the child or children are not in the custody of the disabled person * * * the amount of the pension, compensation * * * may be apportioned as prescribed by the Administrator of Veterans' Affairs. (Oct. 17, 1940, ch. 893,§3, 54 Stat. 1195.)" Title 38 U. S. C., chapter 10.

"§450. Payments to minors, mental incompetents, or persons under legal disability. (1) Where any payment of compensation, adjusted compensation, pension * * * or insurance un-

der any Act administered by the Veterans' Administration is to be made * * * to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State of residence of claimant, or is otherwise legally vested with the care of the claimant or his estate: * * * (2) Whenever it appears that any guardian, curator, conservator, or other person, in the opinion of the Administrator, is not properly executing or has not properly executed the duties of his trust * * * *then and in that event the Administrator is empowered by his duly authorized attorney to appear in the court which has appointed such fiduciary, or in any court having original, concurrent, or appellate jurisdiction over said cause, and make proper presentation of such matters:* * * (June 7, 1924, ch. 320,§21, 43 Stat. 613 * * * Aug. 12, 1935, ch. 510,§1, 49 Stat. 607.)'' Title 38 U. S. C., chapter 10. (Italics supplied.)

I. We will consider plaintiff's assignments of error 1 and 2 together. Both, in our judgment, are good. In 1 plaintiff states that the court erred in holding the investments exempt under the federal statutes. In 2 she states the court erred in holding the guardian was an agent of the Federal Government and that the guardianship funds are exempt because they have not reached the hands of the veteran ward. The errors complained of were the express holdings of the district court.

The following decisions of the United States Supreme Court clearly establish that under the pertinent federal acts property purchased or acquired with benefit payments, of the kind here under consideration, has no immunity from subjection to the payment of the beneficiary's debts. They also establish that such benefit payments or the property in which they have been invested, in the possession of a guardian of an incompetent veteran, are the property of the ward and not of the United States, nor are they merely in transmission to the ward.

McIntosh v. Aubrey, 1902, 185 U. S. 122, 124, 22 S. Ct. 561, 562, 46 L. Ed. 834, 837 (Aubrey v. McIntosh, 10 Pa. Super. 275), opinion by Mr. Justice McKenna, was an ejectment action by Aubrey, the grantee in a sheriff's deed of

the McIntosh land sold August 28, 1897, on execution on a creditor's judgment against Mrs. McIntosh. She had acquired the land on September 5, 1882, with pension money received as the widow of a Civil War veteran, and she contended the land was therefore exempt from execution under R. S. section 4747, supra. The Court of Common Pleas held against her and the Supreme Court of Pennsylvania refused to allow an appeal. In affirming, the United States Supreme Court said:

"The language of the section of itself seems to present no difficulty, and if doubt arises at all it is only on account of the decisions of courts whose opinions are always entitled to respect. Crow v. Brown, 81 Iowa, 344 [46 N. W. 993, 11 L. R. A. 110, 25 Am. St. Rep. 501]; Yates Co. National Bank v. Carpenter, 119 N. Y. 550 [23 N. E. 1108, 7 L. R. A. 557, 16 Am. St. Rep. 855]. But notwithstanding, we think the purpose of Congress is clearly expressed. It is not that pension money shall be exempt from attachment in all of its situations and transmutations. It is only to be exempt in one situation, to wit, when 'due or to become due.' From that situation the pension money of plaintiff in error had departed.

"The simplicity and directness of the statute are impaired by attempts to explain it by the use of other terms than its own. That money received is not money due; and that real estate is not money at all would seem, if real distinctions be regarded, as obvious enough without explanation. Nor are legal fictions applicable. * * *

"We concur, therefore, with the learned judge of the Court of Common Pleas of Pennsylvania, that 'the exemption provided by the act protects the fund only while in the course of transmission to the pensioner. When the money has been paid to him it has "inured wholly to his benefit," and is liable to seizure as opportunity presents itself.' "

In the footnotes on pages 834–837, 46 L. Ed., numerous decisions sustaining the court's holding are cited. Justices Shiras, White, and Peckham dissented.

Spicer v. Smith, 1933, 288 U. S. 430, 433, 434, 53 S. Ct. 415, 416, 77 L. Ed. 875, 878, 879, 84 A. L. R. 1525, 1528, 1529

(case below, Smith v. Spicer's Guardian, 244 Ky. 68, 50 S. W. 2d 64), opinion by Mr. Justice Butler, was before the court on certiorari to the Court of Appeals of Kentucky to review its judgment reversing a county circuit court judgment. Plaintiff Spicer, as guardian of an incompetent veteran, had made general deposits in a bank of payments of war risk insurance and disability compensation received from the United States for his ward. The bank failed and the guardian filed a claim for priority and preference in payment over other claimants of the same class. The claim was allowed by the circuit court, but was reversed by the court of appeals. Plaintiff contended that under R. S. section 3466 the claim of his ward was in fact a debt owing by the bank to the United States, and also, under section 22 of the World War Veterans' Act, 1924 (38 U. S. C., section 454): "He asserts * * * the war risk insurance and disability compensation paid to a guardian of an incompetent veteran remains the money of the United States so long as it is subject to his control and suggests that the guardian is a mere instrumentality of the United States for the disbursement of such money for the benefit of the veteran." In rejecting this contention, and in affirming the court of appeals, the United States Supreme Court said:

"The guardian, appointed by the county court, was by the laws of the State given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. * * * And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such installments. Taylor v. Bemiss, 110 U. S. 42, 45 [3 S. Ct. 441, 28 L. Ed. 64, 65]. Lamar v. Micou, 112 U. S. 452, 472 [5 S. Ct. 221, 28 L. Ed. 751, 758]. Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 503 [14 S. Ct. 678, 38 L. Ed. 528, 531]. Martin v. First Nat. Bank, 51 F.(2d) 840, 844. In re Estate of Stude, 179 Iowa 785, 788; 162 N. W. 10. State ex rel. Smith v. Shawnee County Comm'rs, 132 Kan. 233, 243; 294 Pac. 915; certiorari denied 283 U. S. 855 [51 S. Ct. 648, 75 L. Ed. 1462]. Schouler, Dom Rel., 6th ed., §892.

"The provisions for exemption, non-assignability and suspension of payments plainly imply the passage of title from the United States to the veteran. The denunciation of embezzlement by guardians is not inconsistent with that intention. These regulations, like many to be found in pension laws, disclose a purpose to safeguard to beneficiaries the appropriations and payments made for their benefit [citing cases] and evince special solicitude for the protection of veterans who by reason of mental incompetency are unable to protect themselves. The clauses subjecting such payments to claims of the United States against the veteran and providing for escheat to the United States make against petitioner's claim. Neither would be appropriate or necessary if the money paid to such guardian continued to belong to the United States until actually disbursed by him for the veterans' benefit."

Plaintiff in that case, as does defendant in the case at bar, relied strongly upon United States v. Hall, 98 U. S. 343, 25 L. Ed. 180. The opinion in the Spicer case distinguished the Hall case because of its facts, saying:

"There is no suggestion in the opinion that the United States had any interest as owner in the money embezzled. The power of Congress to punish such misappropriation is not limited to acts causing loss to the United States. [Citing cases] * * * here the guardian was appointed pursuant to state law to act for and on behalf of his ward. He was not an agent or instrumentality of the United States. Shippee v. Commercial Trust Co., 115 Conn. 326, 161 Atl. 775. Puffenbarger v. Charter, 112 W. Va. 488; 165 S. E. 541. State ex rel. Smith v. Shawnee County Comm'rs, supra [132 Kan. 233, 294 P. 915]."

Trotter v. Tennessee, 1933, 290 U. S. 354, 356, 54 S. Ct. 138; 139, 78 L. Ed. 358; 359, 360 (case below, State v. Blair, 165 Tenn. 519, 57 S. W. 2d 455), opinion by Mr. Justice Cardozo, was before the court on certiorari. The ward was mentally incompetent by reason of service in the World War. The United States Government had paid compensation to his guardian since May 1922, at the rate of $100 a month, and disability benefits at the rate of $57.50 a month under a policy of war risk insurance,

In June 1924 the guardian purchased real estate with these government funds. County and state taxes being in arrears, the state "brought suit in the Chancery Court to declare the tax a lien enforcible by a sale. The guardian and his ward answered that by force of the federal statutes the land was exempt. The Chancellor sustained the defense and dismissed the complainant's bill. The Supreme Court of Tennessee reversed, and directed the Court of Chancery to award judgment to the State." The Federal statute relied upon by the guardian was section 454 of chapter 10, Title 38 U. S. C., set out above.

In affirming the Supreme Court of Tennessee, the Supreme Court of the United States said:

"Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. Chicago Theological Seminary v. Illinois, 188 U. S. 662, 674 [23 S. Ct. 386, 47 L. Ed. 641, 649]. On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers. The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. [Cf.] McIntosh v. Aubrey, 185 U. S. 122 [22 S. Ct. 561, 46 L. Ed. 834]. We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. [Citing cases.] Be that as it may, we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the state. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here.

"The judgment of the Supreme Court of Tennessee disallowing the exemption has support in other courts. State v. Wright, 224 Ala. 357; 140 So. 584; Martin v. Guilford County, 201 N. C. 63; 158 S. E. 847 [76 A. L. R. 978]. There are deci-

sions to the contrary, but we are unable to approve them. Rucker v. Merck, 172 Ga. 793; 159 S. E. 501; Atlanta v. Stokes, 175 Ga. 201; 165 S. E. 270; Payne v. Jordan, 36 Ga. App. 787; 138 S. E. 262.

"Our ruling in Spicer v. Smith, 288 U. S. 430 [53 S. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525], *leaves no room for the contention that the exemption is enlarged by reason of payment to the guardian instead of payment to the ward."* (Italics supplied.)

It was shortly after the decision in Trotter v. Tennessee, supra, 290 U. S. 354, 54 S. Ct. 138, 78 L. Ed. 358, that section 454, chapter 10, 38 U. S. C., supra, was repealed and section 454a, chapter 10, 38 U. S. C., supra (Act of August 12, 1935, chapter 510, section 3, 49 Stat. at L. 609), was enacted in its stead.

Lawrence v. Shaw, March 1, 1937, 300 U. S. 245, 248, 57 S. Ct. 443, 445, 81 L. Ed. 623, 626, 108 A. L. R. 1102, 1104 (case below, Lawrence v. Shaw, 210 N. C. 352, 186 S. E. 504), opinion by Mr. Chief Justice Hughes, was before the court on certiorari to the North Carolina Supreme Court to review a judgment of a county superior court. The question involved related to the liability to local taxation of bank deposits made by the guardian of an incompetent veteran of benefit funds paid him by the United States. Immunity from taxation was claimed by the guardian under sections 454 and 454a, supra. The deposits had been assessed and the guardian brought action for a refund. The immunity was denied by the North Carolina Supreme Court. The United States Supreme Court reversed. Speaking of Trotter v. Tennessee, supra, the court said:

"Having no doubt that the moneys payable by the Government to the veteran were exempt until they came into his hands or those of his guardian, we left the question open 'whether the exemption remained in force while they continued in those hands or on deposit in a bank.' The World War Veterans' Act, 1924, provided that the compensation and insurance allowances should be 'exempt from all taxation.' The Act of 1935 is more specific, providing that the payments shall be exempt from taxation and shall not be liable to process 'either before or after receipt by

the beneficiary.' There was added the qualification that the exemption should not extend 'to any property purchased in part or wholly out of such payments.' This more detailed provision was substituted for that of the earlier Act and was expressly made applicable to payments theretofore made. We think it clear that the provision of the later Act was intended to clarify the former rather than to change its import and it was with that purpose that it was made retroactive."

Although the defendants conceded that government warrants and checks and the cash received thereon would be exempt, they contended that if the checks or warrants were deposited in and collected by a bank, the resulting bank credits would be taxable. In answer, the court said:

"We cannot conceive that it was the intent of Congress that the veteran should lose the benefit of this immunity, which would attach to the moneys in his hands, by depositing the government warrants or checks in [a] bank to be collected and credited in the usual manner. These payments are intended primarily for the maintenance and support of the veteran. To that end neither he nor his guardian is obliged to keep the moneys on his person or under his roof. * * * We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or checks received from the Government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested."

Carrier v. Bryant, April 17, 1939, 306 U. S. 545, 547, 59 S. Ct. 707, 708, 83 L. Ed. 976, 978 (case below, Bryant v. Carrier, 214 N. C. 174, 198 S. E. 651), opinion by Mr. Justice McReynolds, was before the court on writ of certiorari to the Supreme Court of North Carolina to review a judgment holding that notes and bonds purchased as investments for an incompetent World War veteran by his guardian, out of payments of benefits under Con-

gressional Acts above noted, were subject to execution upon a judgment against the incompetent. The judgment was affirmed. The opinion quotes from sections 4747, 454a, both supra, and refers to and confirms the decisions of the United States Supreme Court referred to herein. After quoting section 454a, the opinion states:

"The first sentence grants exemption from taxation, claims of creditors, attachment, levy or seizure under any legal process whatever. The things exempted are 'payments of benefits' due or to become due either before or after receipt by the beneficiary.

"Investments purchased with money received in settlement of benefits are not such payments due or to become due. Accordingly, giving the words employed their ordinary meaning, the notes and bonds in question are not exempted by the first sentence in §3. It left them, like other property, subject to taxation, claims of creditors, and legal process.

"The second sentence in the section clearly recognizes the distinction between benefit payments and property purchased with money therefrom. It declares the exemption provisions in the first sentence shall not attach to claims of the United States; also that exemption from taxation shall not extend to property purchased out of benefit payments. Nothing is said concerning claims of creditors. Nevertheless, petitioners seem to maintain, immunity from these must be inferred. But a mere declaration that investments always subject to taxation shall not enjoy exemption therefrom affords no basis for holding them free from claims of creditors. Although the first sentence extended no immunity to investments, apparently out of abundant caution, the second declared them subject to taxation.

"We find nothing in the history or supposed purpose of the enactment adequate to support a construction not in accord with the ordinary import of the words employed.

"Under Spicer v. Smith, (1933) 288 U. S. 430, 434, *payment of benefits to the guardian vested title in the ward*. The exemptions of the statute would not be different if the ward had personally received the payments. * * * The questioned judgment must be Affirmed." (Italics supplied.)

In the case before us the property of the ward in the possession of his guardian is of the same character as that which was involved in the Carrier case, supra. The specific items of property and the amounts thereof are set out in the stipulation of the parties. They are bonds of the United States and, omitting the government insurance policy, carried at $1, they total $18,891. No cash or bank deposits are included therein. As stated in the stipulation:

"3. Each and all of the securities referred to in the preceding paragraph of this stipulation, except United States of America Government Insurance Policy, represent investments made by the guardian * * * from the proceeds" of the benefit payments from the United States.

Under the decision in the Carrier case, investments and securities of the kind in controversy here have no exemption or immunity from subjection to the payment of the debts of the veteran. If the payment of ordinary debts may be enforced from these investments, then certainly, a judgment for alimony, which, according to substantially all precedent and authority, including the decisions of this court, is not a "debt," in the ordinary meaning and acceptation of the word, in favor of plaintiff, who, according to the same decisions and authorities, is not a "creditor" of the ward, is not barred from collection out of said securities, by said Federal statutes as construed by the courts of the United States and by most state courts.

The question whether collection of a judgment or court order for the payment of alimony may be enforced against property acquired with such benefit payments has never been passed upon by the higher federal courts, so far as search on our part or citation by counsel has disclosed. But in In re Flanagan, February 13, 1940, 31 F. Supp. 402, 403, the District Court of the District of Columbia, a court consisting of a chief justice and eleven associate justices, held that said section 454a furnished no immunity against the collection of such an obligation. It was a proceeding in the matter of Flanagan, a lunatic. The auditor recommended payment of alimony to the divorced wife of Flanagan, due her for the months of January to August 1939,

inclusive, but made no recommendation respecting alimony payments coming due monthly thereafter. She took exceptions, which were sustained by Associate Justice F. Dickinson Letts. The court said:

"As presented to the court, it is the position of the committee for the lunatic that the auditor's report should be construed to deny exceptant's right to further payments under the award of the decree. It is shown by the committee for the lunatic that the funds available for the payment of alimony are limited to proceeds of disability compensation paid to and due his ward, and that such funds are exempt from exceptant's claim and demands under the act approved August 12, 1935, c. 510,§3, 49 Stat. 609 (38 U. S. C. A. §454a). I am of opinion that the ruling of the United States Court of Appeals for the District of Columbia, decided February 5, 1940 in the case of Anna Katharine Schlaefer, Appellant, v. Wallace Clayton Schlaefer and Prudential Insurance Company of America * * * controls the decision in the instant case. * * * I think there can be no genuine distinction in principle between the case cited and the one at bar. I subscribe to the reasoning of that case and apply it to this. The judgment for alimony is not a debt in the ordinary sense. It is an obligation of a higher order. The purposes of the exemption statute in that case and the purpose of the exemptions in this were to protect not only the recipient of the benefits but to afford some degree of security to the family and dependents of such recipient. The enactment of these statutes had as their purpose, at least in part, to insure the public against the pauperism of the recipient of the benefits or that of his dependents. A divorced wife is a dependent no less in the status created by the divorce decree than in that fixed by the marriage bond. Congress did not intend to put such benefits beyond the reach of a divorced wife. * * * Primarily, this exceptant was entitled to support from the earnings of her husband; by the divorce decree the court, as a substitute therefor, has granted the award of alimony. It is not a debt but represents the judgment of the court as to the manner in which the husband shall be required to perform his marital and public duty. The statute does not relieve him."

The case of Schlaefer v. Schlaefer, 71 App. D. C. 350, 112 F. 2d 177, 185, 186, 130 A. L. R. 1014, 1023–1025, referred to in the Flanagan case, supra, 31 F. Supp. 402, was argued before Chief Justice Groner, and Associate Justices Edgerton and Rutledge, with opinion by the latter, now of the United States Supreme Court. It is an able and instructive opinion, showing much consideration and wide research. It was an appeal by Mrs. Schlaefer, the petitioner, from an order of the United States District Court of the District of Columbia dismissing a proceeding for sequestration of property of her divorced husband and its application to the payment of alimony and for an injunction restraining the defendant Prudential Insurance Company from paying to the husband disability benefits under policies of insurance. Petitioner secured a limited divorce from her husband on November 2, 1934, requiring him to pay her $60 a month alimony. He left the District on December 20, 1934, and married another. Petitioner instituted this proceeding July 29, 1938, alleging arrears in the alimony payments, and the receipt by him of $100 a month from the insurance company as disability benefit payments. He appeared specially, reserving objections to the jurisdiction, and set up various defenses. One being that the disability payments were specifically exempted from process under section 16(a) of the Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934, chapter 672, 48 Stat. 1175, D. C. Code (Supp. IV, 1938), Title 5, section 220p. It provided:

"Exemption of disability insurance from execution.—No money or other benefit paid, provided, allowed, or agreed to be paid by any company on account of the disability from injury or sickness of any insured person shall be liable to execution, attachment, garnishment, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law, to pay any debt or liability of such insured person."

In reversing the district court and holding this defense to be without merit, the court said:

''The basic issue boils down to whether Congress intended to relieve the disabled insured to the extent of his disability payments from legally enforceable obligation to support his family and those legally dependent upon him. So far as general creditors are concerned the purpose is clear * * * to make the disposition of these funds a matter solely for his judgment. Congress regarded it as better for the creditors to go unpaid than to deprive the debtor and his dependents of this means of support when earning capacity would be cut off. Hence it used broad language prohibiting recourse to the fund by legal process. By removing it absolutely from the reach of such claims, to this extent it protected the insured from want during disability and the public from danger of his becoming a public charge. In ordinary circumstances also the exemption works a like protection of his dependents and of the public from their pauperization by his loss of earning power. * * * By law and the most sacred contract he is obligated to employ it [earning power], while it exists, for dependents' support. Disability does not relieve him of that obligation, though it may affect the extent to which he can perform it. The obligation which he assumes upon marriage operates 'in sickness and in health.' Though he may not be able to work, if he has other means he is required to apply them equitably in the discharge of this duty. For the head of a family, the essentials of sustenance for his dependents remain 'necessaries' as much when he is disabled as when he is well and employed. His disability does not terminate the wife's power to pledge his credit for them, whether for her own or for his children's support. Claims so created prior to any award of alimony or support money appear to fall squarely within the letter and the purpose of the statutory exemption. An award of alimony or support money may destroy this power by giving her a substitute for it. But it does not destroy, on the contrary it enforces, the obligation from which the power is derived. * * * Furthermore, the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only

security, short of public relief. * * * The duty is to share, not to desert, when trouble comes. This construction is not inconsistent with giving full effect to the statute. The protection remaining is broad, applying both to 'debts' and to 'liabilities.' Furthermore, it renders the statute consistent with others which provide methods for enforcement of the husband's and the father's duty of support. * * * We cannot believe that Congress intended to create an exemption so broad and so inconsistent with the policy which it has declared in other acts. We think this construction consistent also with the pertinent authorities. The obligation on which appellant's claim is based is not a 'debt' or a 'liability' in the ordinary usages of those terms. It is a duty of higher obligation. As has been said, it is not one within the usual purposes of exemption statutes."

Petition for rehearing was denied.

That Congress, in the adoption of the statutes granting pensions, bonuses, and veterans' relief, as they appear in Title 38 U. S. C., chapter 10, intended their provisions to benefit also the wives, children, and other dependents of the veteran beneficiary, under proper circumstances, is clearly shown in section 45, chapter 2, thereof, supra, where the pensioner has deserted his wife or minor children; and in section 49a, of the same chapter, supra, where the husband and the wife and minor children are not living together. It is true, of course, that in the enactment of this legislation the first interest and the chief purpose of Congress was the benefit and the protection of the disabled veteran. As said in Lawrence v. Shaw, supra, 300 U. S. 245, 250, 57 S. Ct. 443, 445, 81 L. Ed. 623, 627, 108 A. L. R. 1102, 1104: "These payments are intended primarily for the maintenance and support of the veteran." But the very use of the term "primarily" carries with it and connotes the implication and inference that circumstances may give rise to secondary or other considerations or purposes. In a well-considered opinion by Surrogate Wingate, in In re Estate of McCormick, 1938, Surrogate's Court, Kings County, 169 Misc. 672, 678, 8 N. Y. S. 2d 179, 186, the court said:

"In this connection it was the obvious purpose of the Congress in the initial enactment of the laws now contained in

chapter 10 [section 421 et seq.] of title 38 of the United States Code to make comprehensive provision for the veterans of the World war and for those persons in whom they were interested by reason of ties of blood and marriage. As was said by Judge BROGDEN * * * in Mixon v. Mixon (203 N. C. 566, 569; 166 S. E. 516) [518] : 'war risk insurance, as originally conceived, was a sort of special fund to stand guard about the family of the soldier who was offering his blood upon the altar of his country.' ''

The trial court herein, in holding that the defendant guardian and its predecessor were agents for the United States in holding the funds of the ward, and that such funds therefore had not reached the hands of the veteran, apparently accepted the argument of defendant and the authorities cited by it, notably, Manning v. Spry, October 10, 1903, 121 Iowa 191, 198–200, 96 N. W. 873; Tama County v. Kepler, September 22, 1919, 187 Iowa 34, 38, 173 N. W. 912, and United States v. Hall, 98 U. S. 343, 25 L. Ed. 180. The last-cited case is distinguished in Spicer v. Smith, supra, 288 U. S. 430, 53 S. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525, and is there held to be no authority for the holding of the district court in this case. The two decisions of this court just above noted were announced long prior to the contrary holding in the Spicer case, later reaffirmed in Trotter v. Tennessee, supra, 290 U. S. 354, 357, 54 S. Ct. 138, 140, 78 L. Ed. 358, 360, and Carrier v. Bryant, supra, 306 U. S. 545, 550, 59 S. Ct. 707, 709, 83 L. Ed. 976, 980, and can no longer be regarded as the law on the proposition in this state.

Section 450, supra, 38 U. S. C., chapter 10, expressly provides that these benefit payments may be made to the qualified guardian of a veteran under disability. Such guardian is an officer of the court appointing him and is responsible to that court for the proper performance of his stewardship. The same section provides that for any dereliction in the performance of those duties the administrator of veterans' affairs may present his complaint therefor in that court. Such procedural steps would be wholly unnecessary if the funds or property in which they were invested were still the property of the United States,

for the latter would then take direct action rather than submit the matter to a state court for determination.

Other courts holding that the possession by the guardian of such benefit payments or of property acquired therewith is, in law, the possession of the ward, in whom the legal title rests, and that the guardian is not an agent or instrumentality of the United States as the owner, are: Shippee v. Commercial Tr. Co., 1932, 115 Conn. 326, 161 A. 775, 778; Department of Public Welfare v. Allen, 255 Ky. 301, 74 S. W. 2d 329; Stone v. Stone, 188 Ark. 622, 67 S. W. 2d 189, 190; In re Estate of Stude, 179 Iowa 785, 788, 162 N. W. 10; State ex rel. Smith v. Board of County Commissioners of County of Shawnee, 132 Kan. 233, 294 P. 915, 920, 921 (writ of certiorari denied 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462). See, also, 12 R. C. L., Guardian and Ward, section 23; 28 C. J., Guardian and Ward, section 212; 39 C. J. S., Guardian and Ward, section 75; In re Guardianship of Gardner, 220 Wis. 493, 264 N. W. 643, 645. To say that when the United States delivers its check or warrant, as authorized by an Act of Congress, to a guardian qualified under the statutes of a state to receive it, and who collects it and expends it for the care of his ward or invests it in property in his behalf, the ownership of the property, nevertheless, remains in the United States, is carrying a fiction to an unwarranted length. Speaking of Manning v. Spry, supra, 121 Iowa 191, 96 N. W. 873, and of State ex rel. Spillman v. First State Bk., 121 Neb. 515, 237 N. W. 623, which followed it, the Connecticut court, in Shippee v. Commercial Tr. Co., supra, 115 Conn. 326, 332, 161 A. 775, 777, said:

"We are unable to follow the rulings in these cases to the extent of holding that the claimant as conservator is the agent of the government, and that the securities held by him in which he has invested the funds paid to the estate of his ward are moneys of the United States which after all these years are still in transit to his ward. We do not understand such result to be required by the decision in United States v. Hall, 98 U. S. 343 [25 L. Ed. 180]."

The highest court in several states has passed upon the question of whether a judgment for alimony may be collected

from property purchased with benefit payments received under sections 4747, 454, and 454a, supra. A large majority has held in the affirmative.

In Tully v. Tully, May 17, 1893, 159 Mass. 91, 92, 34 N. E. 79, Bridget Tully sued Luke Tully for separate maintenance and it was decreed that her husband should make specified monthly payments to her. He appealed. In affirming, the court said:

''The only question is whether * * * her petition should be dismissed for the reason that the respondent's only means for [of] complying with the order of the court are from money which he has received or may hereafter receive for a pension granted by the general government. * * * Such order might properly be passed * * * although the only means of the respondent were derived from his pension. Pension money is designed in part to enable the pensioner to support his wife and family, and the statute of the United States, Rev. Sts. §4747, should not be strained to enable him to avoid this duty.''

In Bailey v. Bailey, 1904, 76 Vt. 264, 265, 266, 56 A. 1014, 1015, 65 L. R. A. 332, 104 Am. St. Rep. 935, plaintiff was decreed permanent alimony payable in specified installments. In affirming, the court said:

''In the making of this last order the court took into consideration the pension of twenty-four dollars per month which the petitionee receives from the United States government for disabilities resulting from his service as a soldier in the Civil War, holding as a matter of law that the court might properly consider that as a part of his financial resources. To this holding the petitionee excepted.''

The latter claimed exemption under R. S. section 4747 (38 U. S. C., chapter 2, section 54). After quoting the statute, the court continued:

''When it [pension] has been received by him, it has inured wholly to his benefit, within the meaning of this statute. Then, to the same extent as money from other sources, it is subject to attachment, levy, and seizure as opportunity presents itself,

[Citing cases] * * * A husband's faculties are his capabilities of maintaining a family, ordinarily consisting of his income from whatever source derived, and they, with all the other circumstances surrounding the parties, should be taken into consideration when alimony or other annual allowance is decreed to be paid by the husband to the wife.'' (Citing authorities.)

In In re Guardianship of Gardner, supra, 1936, 220 Wis. 493, 498, 499, 264 N. W. 643, 645, 646, the divorced wife of a mentally incompetent World War veteran made claim against his estate in the hands of his guardian. The judgment of divorce awarded her the custody of a minor child and ordered the veteran to pay her $8 monthly for the child's support. The unpaid amount of this award was fixed by the court at $2,451.24, but it credited thereon $1,722.76 which she had received direct from the Veterans' Administration and gave judgment for the difference. In addition to a small sum in a bank and a lost and unpaid adjusted compensation certificate for $1,577, the guardian had $3,080.06 in property purchased with government benefit payments, all paid under sections 454 and 618. The guardian claimed exemption thereunder and under section 454a. In affirming, the court, after quoting R. S. section 4747, and discussing McIntosh v. Aubrey, supra, 185 U. S. 122, 22 S. Ct. 561, 46 L. Ed. 834, and Trotter v. Tennessee, supra, 290 U. S. 354, 54 S. Ct. 138, 78 L. Ed. 358, said:

''We see no material difference as to exemption between land purchased with moneys received by the veteran from the government as compensation and moneys so received invested in a mortgage, as $2,000 of it herein involved is invested, or invested in United States treasury bonds, as $1,003.42 of it is invested. If, under the statute relied on when the veteran invests his money in land or bonds, the investment is subject to taxation, as stated by Mr. Justice CARDOZO in the above quotation, so, under the same statute, is it subject to application to pay claims of his creditors. And, if there is no enlargement of exemption by reason of payment to the guardian instead of to the ward, so there is no enlargement if the investment is made by the guardian instead of by the veteran himself.''

The court, after citing Hollis v. Bryan, 166 Miss. 874, 140 So. 687, Stone v. Stone, 188 Ark. 622, 67 S. W. 2d 189, and Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285, all sustaining the claimant's contention, said:

"The three cases above stated afford basis for holding that claimant is not a creditor within sec. 454. While the amount claimed is not alimony for the support of the wife, it is alimony for the support of the child, and we perceive no difference between the nature of the payments ordered ·by the court as alimony for support of the wife and alimony ordered for the. support of the child."

Speaking of sections 454 and 454a, the court said:

"We are of opinion that the new statute [454a] does not require any modification of the views above expressed."

In Stone v. Stone, supra, 1934, 188 Ark. 622, 67 S. W. 2d 189, the wife sued for divorce ón the ground of her husband's desertion prior to his adjudication of insanity. His guardian had mortgage securities in the amount of $1,200 exclusively derived from payment made by the United States Veterans' Bureau. An award therefrom of $400 to plaintiff was affirmed.

In Stirgus v. Stirgus, 1935, 172 Miss. 337, 341, 160 So. 285, 286, the wife sued for divorce, which was granted, together with $15 per month as temporary alimony and $50 attorney's fee. The husband received from the United States $77.50 per month on account of his son's being in service during the World War. In affirming on defendant's appeal, the court, after referring to Hollis v. Bryan, 166 Miss. 874, 143 So. 687, said:

"The court * * * held * * * that a demand for alimony is not within the terms of the statute exempting soldiers' compensation from claims of creditors; a wife not being a creditor within the statute. World War Veterans Act, sec. 22, 38 U. S. C. A., sec. 454. Under that statute, the term 'creditor' has reference to an ordinary contractual obligation by which debtors and creditors are created, or to statutory debt.

"The obligation of a husband to support his wife is not a debt in the sense of this statute, but is an obligation growing

out of the marriage status and public policy, and may be coerced by imprisonment as well as judgment and execution. When the husband receives money from the government, it may be subjected to this obligation to support his family so long as the husband is not deprived of a reasonable amount for his support. He is not entitled, as against his wife and dependents, to use the entire amount for his own support.

"In the case at bar, the amount received from the government by the appellant is sufficient to support him in reasonable comfort after paying the allowance ordered by the chancery court."

In Wheeler v. Wheeler, 1912, N. J. Ch., 94 A. 85, it was held, under R. S. section 4747, that where the husband's income from his salary was $150 a month and from a veteran's pension $12 per month, the pension money might be taken into consideration in determining the amount of alimony he should pay, notwithstanding the said statute declared that no money due a pensioner should be liable to seizure, etc.

In Arms' Committee v. Arms, 1935, 260 Ky. 634, 638, 86 S. W. 2d 542, 544, a divorce suit by the husband, it appears that he had filed suit for divorce in October 1916, but before final action was drafted into the Army and served overseas in the World War. He left the country under the impression that he was divorced. After his discharge he became mentally deranged and was placed under guardianship. Because of his disability he was awarded compensation. When his wife made claim for a portion thereof it was found that he had no decree of divorce. Through his committee he asked for divorce, because of five years' separation, and it was granted. His committee had the sum of $2,725.25 from benefit payments on deposit to his credit in the bank. From this deposit the court awarded her alimony in a lump sum of $619.17. The committee asked that the award be denied on the ground that the money was exempt from claims of alimony under 38 U. S. C., section 454, and under section 13, chapter 68, Acts of 1930 (Kentucky Statutes, section 2043-13, Baldwin's 1933 Supp.), which section provides that the guardian or committee shall not apply any portion of the ward's estate for the support or maintenance

of any person other than the ward except as therein indicated. In affirming the award the court held that under its decisions, including Smith v. Spicer's Guardian, 244 Ky. 68, 50 S. W. 2d 64, affirmed in Spicer v. Smith, 288 U. S. 430, 53 S. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525, the guardian of an incompetent soldier appointed by the state was not an instrumentality or agent of the United States, and payment by the latter vested title in the ward and operated to discharge the obligation of the United States to the soldier, and, with respect to the state statute, said:

"It is manifest that this section does not apply to debts or claims of creditors *of this character against the ward.*" (Italics supplied.)

In Hannah v. Hannah, November 13, 1940, 191 Ga. 134, 137, 138, 11 S. E. 2d 779, 780, 781, the wife sued for divorce, which was granted. The defendant brought error to review the judgment with respect to the award of alimony. The court, in an able opinion affirming the award, reviewed the pertinent decisions of the state courts and the federal courts and also the federal statutes, supra. The court said:

"The question presented is whether 'benefit payments' made and to be made to the plaintiff in error by the United States Government by reason of the death of a son by his first wife while in military service during the world war, and property purchased with such 'benefit payments,' can properly be considered by the judge as available resources of the plaintiff in error, in awarding his second wife temporary alimony."

The husband was seventy-nine years old and unable to work. He was receiving $45 a month from the government. Out of this he had saved about $100 in cash and had bought a truck worth about $200 which he used for his transportation. The court awarded the plaintiff $15 a month as temporary alimony and $25 attorney's fees. The court said:

"Accordingly, the plaintiff in error can in no event claim exemption of his personal property, though it was purchased with payments made to him by the United States government.

\* \* \* It would not seem incompatible with the rights of plaintiff in error, and therefore an abuse of discretion on the part of the judge in granting temporary alimony, had the award been based solely on his ownership of this property, and his ability to realize therefrom by sale sufficient sum to meet the periodic payments. But we do not hesitate to go further and rule that section 454a was not designed to protect benefit payments from a claim of the character of alimony, and this of course includes a reasonable attorney's fee, which stands in such case on the same footing as temporary alimony. [Citing cases.] This view is sustained by the adjudicated cases [generally], with but few exceptions. \* \* \* We view the case as sound on the principle that alimony is not such a debt, or claim, as was intended to be exempted by the statute. Other cases to the same effect are:'' (Citing them.)

Gaskins v. Security-First Nat. Bk., 1939, 30 Cal. App. 2d 409, 417, 86 P. 2d 681, 685, was an action by plaintiff against defendant bank, the guardian of an incompetent veteran of the World War, for the care of his minor children. He was a brother of the plaintiff. The guardian's account showed a balance of $12,000. It was conceded that all of the assets of the ward in the guardian's possession were compensation and war risk insurance money received under the provisions of World War Veterans' Act, 1924, as amended by 38 U. S. C., section 454a. As a special defense the defendant alleged the funds were therefore exempt from payment of the claim. Judgment for $6,850 was allowed the plaintiff. On defendant's appeal the judgment was affirmed. The court held that under said section 454a the obligation of a father to support his minor children was not a ''debt'' but was an obligation growing out of the parental status and public policy, the performance of which ordinarily can be compelled by imprisonment as well as judgment and writ of execution, and that the statute does not apply to debts or claims against the ward, an incompetent veteran, for the care of his minor children.

In Hollis v. Bryan, 1932, 166 Miss. 874, 880, 882, 143 So. 687, 689, the plaintiff, who had obtained a divorce in 1924 from Marvin Bryan, and the custody of their minor child, with

an award of $20 per month alimony for fifteen years, no part of which was paid, brought action against John L. Bryan, the guardian of Marvin, to recover the amounts past due and unpaid. The trial court held that money in the hands of the guardian was not subject to the judgment for alimony, under section 22 of the World War Veterans' Act as amended (38 U. S. C., section 454), exempting money so allowed to disabled soldiers from the claims of all creditors. In reversing the decree for defendant, the court said:

"* * * we think the court was in error in holding that the money due the wife * * * was a debt and that the appellant was a creditor, within the meaning of the federal statute. * * * We are of the opinion that the term 'creditors' used in the federal act has reference to an ordinary contractual obligation by which creditors and debtors are created, and that a wife is not a creditor within the meaning of the statute; and that, therefore, a demand for alimony does not come within the terms of the statute exempting soldiers' compensation from the claims of creditors. * * *

"We do not think it was the purpose of the government to prevent the states from coercing payment of a public duty by a disabled soldier by holding him to apply, to the needs of his wife and children, a part of the funds possessed by him, although derived from the government. We cannot assume that the federal government intended to throw this protection around the disabled soldiers, so as to enable them to refuse to discharge their duty to support their wives and children.

"The case here must be tested by general principles. The duty of a soldier to support his wife and children, if he has the means to do so, should be coerced in case he is recalcitrant. The protection the government intended to give him, in our opinion, was protection against 'creditors,' using that term in a contractual sense, or in the sense of a statutory debt. Where a claim is a mere debt, the purpose of giving exemption was to keep the allowance for the soldier and his dependents."

Speaking of chapter 10, section 421 et seq., 38 U. S. C., the Supreme Court of New Jersey, in Tompkins v. Tompkins,

September 11, 1944, 132 N. J. Law 217, 220, 38 A. 2d 890, 891, said: "The policy of the statute in this regard is to afford a measure of economic security for servicemen and their dependents."

It is definitely established by the decisions of the courts of the United States and of the states that the exemption against execution or seizure by any legal process, provided in said sections 4747, 454, 454a, and 618, all supra, has no application to awards or judgments of alimony granted to the wife of a divorced veteran. This is in accord with the generally recognized rule and holding of the courts that statutes which provide that property or payments of specified kinds are exempt from judgment execution or liability for debts have no application in the award or collection of alimony or support for a wife or minor child. We note some of these decisions:

Zwingmann v. Zwingmann, 1912, 150 App. Div. 358, 359, 134 N. Y. Supp. 1077, 1078—A proceeding by a wife to sequester from the monthly pension of her husband from the police pension fund of New York City to satisfy monthly payments of $26 due her by a judgment of separation. The order was granted and a motion to vacate it was denied. The defendant relied on section 352 of the charter of the city of New York, Laws of 1901, chapter 466, which provided that the " 'moneys, securities and effects of the police pension fund, and all pensions granted and payable from said fund shall be and are exempt from execution and from all process and proceedings to enjoin and recover the same by or on behalf of any creditor or person having or asserting any claims against, or debt or liability of, any pensioner of said fund.' " Judge Woodward, for the court, said:

"* * * it is contended in behalf of the defendant * * * that his property in this pension fund is exempt from the duty he owes to the State to support and maintain his wife; that notwithstanding the legal oneness of the man and wife, which in this respect has not been changed by statute from the common-law rule, the defendant is entitled to be supported and sustained out of a trust fund created under the laws of this

State, while his wife goes hungry. We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. * * * and this court should not be astute in discovering a way to relieve the defendant of his obligations, voluntarily assumed, because of any strict construction of the language of an act which was designed to give protection to the faithful servants of the public and those dependent upon them.''

Hodson v. New York City Employees' Retirement System, 1935, 243 App. Div. 480, 481, 278 N. Y. Supp. 16, 17—An employee of the municipal court abandoned his wife and child, leaving accumulated deductions and interest to his credit in the annuity savings fund of the defendant. A warrant of seizure was issued in behalf of the dependents, which the defendant refused to comply with because of section 1723 of the Greater New York Charter, which provided:

'' 'The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions [etc.] * * * are hereby exempt from any state or municipal tax, and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this chapter specifically provided.' ''

The seizure was sustained.

Commons v. Bragg, 183 Okla. 122, 124, 80 P. 2d 287, 289, 290—A divorce action by Elizabeth Bragg against Glenn Bragg. He had been awarded $4,000 under the workmen's compensation law of Oklahoma, which was delivered to Commons, his attorney. The wife asked for $2,000 alimony and an injunction against delivery of the money by the attorney to him. Defendant claimed exemption under section 13372, Okla. Stat., 1931, which provided:

''Claims Non-assignable—Exempt From all Process. Claims for compensation or benefits due under this Act shall not be assigned, released or commuted except as provided by this Act,

and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.''

In affirming a decree for the wife the court reviews the pertinent authorities. Of section 454, 38 U. S. C., it said:

''The purpose of giving an exemption was to keep the allowance for the soldier and his dependents. * * * We also find it is the general rule, supported by the weight of authority, that alimony is not a debt within constitutional or statutory provisions against imprisonment for debt. It being held that an order for the payment of alimony possesses different characteristics from an ordinary debt, since it is designed to secure the performance of a legal duty in which the public has an interest. Cain v. Miller [109 Neb. 441], 191 N. W. 704, 30 A. L. R. 125.''

After comment and citations that a discharge in bankruptcy does not bar the collection of alimony coming due either before or after the discharge, the court said:

''Consequently, section 13372 * * * does not exempt the proceeds of an award of the Industrial Commission under the Workmen's Compensation Law from the claims of the injured employee's wife for alimony and support money for their minor child. She is not a creditor nor her claim a debt within the purview of said section.''

Other decisions rejecting the exemptions against alimony, under statutes of the character noted in the citations just preceding are: Saunders v. Saunders, 243 Wis. 94, 9 N. W. 2d 629, 630; Montgomery v. Montgomery, 1946, 80 App. D. C. 344, 153 F. 2d 634, 635; Rankins v. Rankins, 1942, 52 Cal. App. 2d 231, 126 P. 2d 125; Monck v. Monck, 184 App. Div. 656, 172 N. Y. Supp. 401; Weigold v. Weigold, 236 App. Div. 126, 258 N. Y. Supp. 348; Pugh v. St. Louis Police Relief Assn., 1944, 237 Mo. App. 922, 179 S. W. 2d 927, 935; Wetmore v. Wetmore, 149 N. Y. 520, 529, 44 N. E. 169. 33 L. R. A. 708. 52 Am. St. Rep. 752; Haakenson v. Coldiron, 1937, 190 Wash. 627, 70 P. 2d 294, 295; Willen v. Willen, 1932, 121 Cal. App.

351, 8 P. 2d 942; Bruton v. Tearle, 7 Cal. 2d 48, 59 P. 2d 953, 106 A. L. R. 580; Bates v. Bates, 74 Ga. 105.

The foundation for the decisions herein that the various exemption statutes noted are not applicable in the allowance or collection of alimony awards is the inherent nature and purpose of that obligation. It does not arise from any business transaction but from the marital relation. It is not founded on either an express or implied contract but on the natural, moral, and legal duty of the husband to support his wife, and the public policy of the state, as established by legislation and judicial decision. The wife's right of support is recognized in all civilized countries. It exists during the marriage but it is not a debt owing by the husband in its legal or common acceptation. He cannot escape the obligation by abandoning his wife, or by his misconduct, even though it results in a dissolution of the marriage. The state has a social and financial interest in the performance of that duty and will not permit him to cast it off. In the words of Sir J. P. Wilde, in Sidney v. Sidney, 4 Swab & T. 178, 182:

* * no man should, in my judgment, be permitted to rid himself of his wife by ill-treatment, and at the same time escape the obligation of supporting her.''

As aptly stated, in Romaine v. Chauncey, 129 N. Y. 566, 570, 29 N. E. 826, 827, 14 L. R. A. 712, 714, 26 Am. St. Rep. 544:

''The divorce with its incidental allowance of alimony simply continues his duty beyond the decree and compels him to perform it, but does not change its nature. The divorce and consequent separation are wholly his own fault, and do not relieve him from the continued performance of the marital obligation of support. The form and measure of the duty are indeed changed, but its substance remains unchanged.''

The husband is bound in law and equity for the support and maintenance of his wife. Graves v. Graves, 36 Iowa 310, 14 Am. Rep. 525; Avery v. Avery, 236 Iowa 9, 11, 17 N. W. 2d 820. This obligation is not a debt, in a legal sense, during

marriage, and it is not a debt after that relation has been dissolved by a decree of divorce brought about by the statutory transgression of the husband, in which the obligation is designated as alimony. In awarding alimony the general duty of the husband which previously existed is measured by the court and made specific. It is unnecessary to cite further authority on the question, since all courts, with hardly a dissent, are in agreement that, within the purview of the various exemption statutes referred to herein, alimony is not a "debt", and the spouse to whom it is awarded is not a "creditor" of the other. It was so stated, perhaps as dictum, in Daniels v. Lindley, 44 Iowa 567, 569, where the court said:

"The claim of the wife : alimony is not in the nature of a debt; she is not the creditor of the husband; it is an equitable allowance made to her out of her husband's estate, upon dissolution of the marriage relation."

And in Picket v. Garrison, 76 Iowa 347, 349, 41 N. W. 38, 14 Am. St. Rep. 220, the court stated that a "claim for alimony is not a debt within the ordinary meaning of that term."' In Schooley v. Schooley, 1918, 184 Iowa 835, 169 N. W. 56, 11 A. L. R. 110, the court, by a four-to-three decision, held that alimony was a "debt" within the purview of section 4011, Code, 1897 (section 627.10, Code, 1946), which exempted the personal earnings of a debtor residing in the state and the head of a family, acquired within a specified time, from liability for his debts. There was some mention of the decision in the Schooley case in Shipley v. Shipley, 187 Iowa 1295, 1304, 175 N. W. 51, and in Malone v. Moore, 204 Iowa 625, 627, 628, 215 N. W. 625, 55 A. L. R. 356, but in Malone v. Moore, 212 Iowa 58, 62, 236 N. W. 100, in construing section 12101, Code, 1927 (section 639.25, Code, 1946), respecting the garnishment of debts due a defendant, the court expressly overruled the above-noted holding in the Schooley case and held that, within the meaning of said statute on garnishment, an award of alimony was not a debt.

On every occasion when this court has passed upon the question of whether any debt-exemption statute applies to the

awarding or collecting of alimony, it has held, in agreement with the decisions of courts generally, that they have no application. In Daniels v. Morris, 54 Iowa 369, 371, 6 N. W. 532, 533, the court said:

"It cannot be questioned that in a suit for divorce and alimony the law of homestead has no application. The homestead is for the benefit of the family, and not for the husband alone. In a suit for divorce and alimony the court in adjusting the rights of the parties is not precluded from making such a division or disposition of the homestead between the parties as may appear to be just and equitable, taking into consideration the circumstances of the family and all the surroundings. * * * There is nothing in these views inconsistent with the case of Byers. v. Byers, 21 Iowa, 268, nor of any other case to which our attention has been called."

This court has never departed from such holding and policy. Luedecke v. Luedecke, 195 Iowa 507, 192 N. W. 515; Ayers v. Ayers, 227 Iowa 64, 650, 288 N. W. 679; Davis v. Davis, 228 Iowa 764, 773, 292 N. W. 804.

Most certainly, in passing upon the earning capacity of the husband to determine the amount of future payments toward the support of the divorced wife, the court need not consider the exemption statute protecting the earnings of his personal services from liability for his debts, nor the statute granting him personal property exemptions. Statutes protecting the homestead, or the exempt personal property of the husband, even though all were acquired with pension money, are for the benefit of the husband, wife, and family. This is also true of the statute exempting personal service earnings from debt liability, and those exempting payments for workmen's compensation, and the proceeds of insurance, under sections 509.13 (superseded by chapter 256, section 13, Acts of the Fifty-second General Assembly), 511.37, and 512.17, all of the Code of 1946. It would be incongruous and unjust to hold that all of these exemptions from liability for ordinary debts should operate to the prejudice of the wife or children in a contest with the husband as to alimony and support money when the

principal reason for the exemptions was to secure these dependents.

In answer to a claim for homestead and personal property exemption, the court, in Anderson v. Anderson, 183 N. C. 139, 144, 110 S. E. 863, 865, said:

"Hence, both law and society demand that the marriage relation be recognized, respected, and maintained, and that the husband's duty to support his wife and their offspring be awarded higher sanction than the strait contractual obligation to pay value for a yoke of oxen or a piece of land. The defendant, therefore, cannot escape the performance of his duty to support the plaintiff on the ground that he sustains toward her the relation of a mere debtor."

Our decision in Szymanski v. Szymanski, 188 Iowa 931, 936, 176 N. W. 806, 807, a suit for divorce, strongly supports the plaintiff's case. There the contest was over the homestead purchased with money received by the husband from the United States as a retired soldier. He claimed the homestead was exempt under section 4010, Code, 1897 (section 627.9, Code, 1946), as having been bought with pension money. Although the court denied this contention, on the ground that such retirement pay was not a pension, it said:

"In any event, the court has full authority to set aside specific property of the husband to the wife as alimony, *whether exempt or not. Ordinarily, exemptions are allowed for the benefit of the family.* It is true that the exemption of pension money, or property purchased therewith, extends to every pensioner, whether the head of a family or not; *but surely, it was not the intention of the legislature, in exempting pension money, or property purchased therewith, from execution, to change its status with reference to the inchoate rights of the wife to dower or alimony therein. * * * Whether exempt or not, the authority of the court to award the same to plaintiff as alimony cannot be questioned.* Daniels v. Morris, 54 Iowa 369; Williamson v. Williamson, 185 Iowa 909; Section 3180, Code." (Italics supplied.)

Section 3180, Code, 1897 (section 598.14, Code, 1946), broadly provides that when a divorce is decreed the court may make such order in relation to the *"property, parties, and the maintenance of the parties as shall be right."* (Italics supplied.)

United States bonds purchased with government benefit payments of the kind here involved are property, and no statute of Iowa or decision of this court exempts them from the provisions of said section 598.14, and the consideration of a court in complying therewith.

Section 4010, Code, 1897, which the court had under consideration in the Szymanski case, was enacted at the same time and as a part of the same legislative act as section 627.8, Code of 1946 (section 4009, Code, 1897), upon which defendant strongly relies. What the court said in the Szymanski case applies fully and directly to this case. Certainly the legislature never intended, by the adoption of section 627.8, to deprive the court in a divorce proceeding from the consideration of assets of the character held by the defendant in this case, as the property and available resources of the husband, in making an award of alimony to the wife, nor to exempt them from subjection to the payment thereof. In speaking of this statute, we said, in Cook v. Allee, 119 Iowa 226, 229, 93 N. W. 93, 94, it "was originally enacted by the 20th General Assembly to meet previous decisions which held otherwise." These cases were Webb v. Holt, 57 Iowa 712, 11 N. W. 658 (two judges dissented); Triplett v. Graham, 58 Iowa 135, 12 N. W. 143; Farmer & Sons v. Turner, 64 Iowa 690, 21 N. W. 140; and Foster & Hannum v. Byrne, 76 Iowa 295, 35 N. W. 513, 41 N. W. 22, and perhaps others. None of them involved the collection of alimony. All of them held that the pension money was not protected after it reached the hands of the soldier. It was only to avoid this holding that the statute was passed. There is nothing to indicate that the legislature had any other intention or any intention to exempt property purchased with pension money from subjection to payment of alimony.

A court should, of course, carefully consider the needs, property, earning power, and physical condition of the divorced parties, and particularly those of a disabled soldier.

We have carefully considered all propositions urged by defendant and all authorities relied upon. In view of the great weight of authority to the contrary, those authorities are not convincing. In Yake v. Yake, 1936, 170· Md. 75–80, 183 A. 555–558, a five-to-three· decision, the facts make the holding of little application. That was a suit to annul the marriage because of fraud upon the soldier. It was annulled, and the court was particular to stress the fact that alimony was not an incident to and could not be granted in a marriage annulment. This stress was, no doubt, because of the holding in Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A. L. R. 634, cited therein, that alimony is not a debt. In In re Irish, 51 Idaho 604, 9 P. 2d 501, a four-to-one decision, there was an able dissent. In Brewer v. Brewer, 19 Tenn. App. 209, 84 S. W. 2d 1022, an involved opinion, consisting largely of many pages of verbatim pleadings, it is difficult to be certain just what the ground of the decision is. The reasoning in Riker v. Riker, 160 Misc. 117, 289 N. Y. Supp. 835, is not persuasive. In Mahar v. McIntyre, 1936, 1 Cir., Mass., 16 F. Supp. 961–963, the facts clearly distinguish it. The creditor—the holder of a simple judgment —was seeking to recover money which the soldier had just received in cashing an adjusted service certificate and bonds thereunder.

Defendant's contention that sections 454a and 618 should be liberally construed to protect the beneficiaries applies to both the plaintiff and the ward, and favors neither. Exemption statutes are to be broadly and liberally construed to effect their humane purposes. Dunbar v. Spratt-Snyder Co., 208 Iowa 490, 492, 226 N. W. 22, 23, 63 A. L. R. 1016; Olsen v. Lohman, 234 Iowa 580, 584, 13 N. W. 2d 332; Millsap v. Faulkes, 236 Iowa 848, 852, 20 N. W. 2d 40, 161 A. L. R. 1252. But, as said in the case first cited just above:

"'Exemption of property from the payment of debts is purely statutory, and courts may not enlarge the exemption * * *.' Morgan & Hunter v. Rountree, 88 Iowa 249 [250]."

It is our conclusion that the court erred in holding the property of the ward was exempt under the federal statutes, and in holding that possession of the guardian was the possession of

the United States. On the latter proposition, in addition to what we have already said, attention is called to Fayette County v. Hancock, 83 Iowa 694, 696, 49 N. W. 1040, and to Appanoose County v. Carson, 210 Iowa 801, 807, 229 N. W. 152, wherein it is held that funds in the possession of the guardian are constructively in the possession of the ward and are not in the course of transmission to the ward.

II. For the reasons set out in Division I hereof we hold that the court erred in deciding that the investments in the defendant's possession are exempt in Iowa under section 627.8, Code, 1946, or section 511.37, Code, 1946, and that the investments can under no circumstances be subject to execution in Iowa.

The judgment is—Reversed and remanded.

OLIVER, C. J., and GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.